[No. 44684-3-I.   Division One.   March 13, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. T.C., *Appellant*.

*Christopher Gibson* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Emily K. Johnson, Deputy*, for respondent.

Aɢɪᴅ, A.C.J. — After T.C. pleaded guilty to one count of first degree child molestation, the juvenile court imposed a manifest injustice disposition of 104 weeks instead of the standard range of 15 to 36 weeks. The disposition was based partly on the court's conclusion that T.C. had a high risk of reoffending due to several other instances of improper sexual conduct to which T.C. admitted but for which he had not been charged. On appeal T.C. challenges the juvenile court's consideration of these uncharged crimes. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1998 T.C., then age 14, attempted to initiate anal intercourse with his seven-year-old cousin, D.M. He was charged with and pleaded guilty to one count of first degree child molestation. The State requested a manifest injustice disposition of 104 weeks, arguing that there was lack of parental control and that T.C. posed a high risk to reoffend and a risk to the community. In support of its "high risk to reoffend" argument, the State noted that T.C. had admitted to various other acts of inappropriate sexual conduct, including attempting anal intercourse with a cat and sexually molesting three young children in addition to D.M.[1]

At the disposition hearing, the State added a fourth ground—victim vulnerability—to its request for a manifest injustice disposition and requested a disposition of 104 weeks of commitment to the Juvenile Rehabilitation Administration, well outside the standard range of 15 to 36 weeks. The trial court granted the State's request based on the following aggravating factors: (1) victim vulnerability; (2) nonamenability to community-based treatment; (3) lack of parental control; and (4) high risk to reoffend.

In a motion for accelerated review, T.C. argued the trial court erred when it relied on his uncharged offenses to find two of the four aggravating factors, victim vulnerability

---

[1] Although it is unclear exactly when these incidents took place, the record indicates that they occurred relatively close in time to the incident involving D.M.

and high risk to reoffend, because "[c]onsideration of unproven allegations violates the defendant's constitutional right to the presumption of innocence." In its response, the State conceded this allegation but argued that the record independently supports the court's findings of victim vulnerability and high risk to reoffend and that "[h]ad the trial court not been presented with evidence of uncharged crimes, it would have imposed the same disposition." At oral argument on the motion for accelerated review before a court commissioner, however, the State altered its position and stated that a juvenile court judge may consider uncharged crimes in determining whether a juvenile offender presents a high risk to offend.[2] The commissioner referred the matter to a panel for consideration.

## DISCUSSION

A juvenile court must impose a disposition within the standard range unless doing so would effectuate a "manifest injustice."[3] A manifest injustice is "a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of [the Juvenile Justice Act of 1977 (JJA)]."[4] The JJA defines the general scope of a disposition hearing:

> In disposition hearings all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though such evidence may not be admissible in a hearing on the information. The youth or the youth's counsel and the prosecuting attorney shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports when such individuals are reasonably available, but sources of confidential infor-

---

[2]The State conceded, however, that a disposition court may not consider a juvenile offender's uncharged crimes in determining victim vulnerability.

[3]RCW 13.40.160.

[4]RCW 13.40.020(17).

mation need not be disclosed. The prosecutor and counsel for the juvenile may submit recommendations for disposition.[5]

The disposition court must consider "information and arguments offered by parties and their counsel" and "any predisposition reports."[6] The court must also consider a list of mitigating factors, such as provocation or elapsed time since any prior criminal offense, and aggravating factors, such as whether the victim was particularly vulnerable or the juvenile attempted to inflict serious bodily injury.[7] Finally, the court may *not* consider the juvenile's sex, factors indicating that he or she is dependent, or the race, religion, or economic class of the juvenile or his or her family.[8]

Although a disposition court's finding that a juvenile poses a high risk to reoffend is a valid ground for a manifest injustice disposition,[9] there is no statutory or judicial authority on whether a court may consider uncharged crimes in determining a juvenile's risk of reoffending. In comparison, the Sentencing Reform Act of 1981 (SRA) prohibits consideration of facts that establish additional crimes in determining whether to impose a sentence outside the standard range in adult sentencing proceedings,[10] a principle commonly known as the "real facts doctrine."[11] T.C. and the State disagree on whether the real facts doctrine applies in juvenile proceedings, although both parties look to the respective purposes of the JJA and

[5]RCW 13.40.150(1).

[6]RCW 13.40.150(3)(b), (c).

[7]RCW 13.40.150(3)(h), (i).

[8]RCW 13.40.150(4).

[9]*State v. J.N.*, 64 Wn. App. 112, 823 P.2d 1128 (1992).

[10]RCW 9.94A.370(2) provides: "Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range [with some exceptions not applicable here]."

[11]*See State v. Wakefield*, 130 Wn.2d 464, 475-76, 925 P.2d 183 (1996).

the SRA for guidance in answering the question.[12] T.C. argues that the SRA and the JJA share common purposes of accountability and proportional punishment, which support extending the real facts doctrine to juvenile proceedings. In contrast, the State focuses on the JJA's unique purpose of rehabilitating and addressing the needs of juveniles and alleges that this special purpose demands that disposition courts be allowed to consider uncharged crimes when determining whether a manifest injustice disposition is warranted.

RCW 13.40.010(2) states the overall aim of the JJA:

> It is the intent of the legislature that a system capable of having primary responsibility for, being accountable for, and *responding to the needs of youthful offenders*, as defined by this chapter, be established. It is the further intent of the legislature that youth, in turn, be held accountable for their offenses and that communities, families, and the juvenile courts carry out their functions consistent with this intent. . . .[13]

Among the "equally important purposes" of the JJA are:

(a) Protect the citizenry from criminal behavior;

. . .

(c) Make the juvenile offender accountable for his or her criminal behavior;

(d) Provide for punishment commensurate with the age, crime, and criminal history of the juvenile offender;

. . .

(f) Provide necessary treatment, supervision, and custody for juvenile offenders;

. . .

(j) Provide for a clear policy to determine what types of of-

---

[12]*See* RCW 13.40.010(2); RCW 9.94A.010. Court interpretations of adult criminal statutes may be applied in juvenile proceedings, in the absence of language to the contrary, only if the purpose of the adult criminal statute is consistent with the purposes of the JJA. *State v. Wall*, 46 Wn. App. 218, 221, 729 P.2d 656 (1986).

[13](Emphasis added.)

fenders shall receive punishment, treatment, or both, and to determine the jurisdictional limitations of the courts, institutions, and community services[.][14]

In contrast, the SRA has a limited set of purposes focused on punishment:

The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve him or herself;

(6) Make frugal use of the state's and local governments' resources; and

(7) Reduce the risk of reoffending by offenders in the community.[15]

■ Our Supreme Court has discussed the distinctions between the purposes of these two statutory schemes. "The purposes underlying the juvenile system and the procedures designed to effect those purposes are significantly different

---

[14]RCW 13.40.010(2)(a)-(j).

[15]RCW 9.94A.010. The Legislature recently amended this section of the RCW, adding the seventh purpose and language ("and local governments' resources") to the sixth purpose. These changes do not affect our decision because the amending law, LAWS OF 1999, ch. 196, § 1, dealt primarily with risk to public safety when offenders reenter the community, not with the needs of offenders.

from the purposes and procedures of the adult system."[16] The JJA's purposes are "more complex" than the SRA's, and the "critical distinction" is that the JJA's policy of responding to the needs of offenders is found nowhere in the adult criminal justice system.[17] Rather, punishment is the adult system's paramount purpose.[18] "[W]hile the JJA shares with the adult system the purposes of rendering a child accountable for his acts, punishing him and exacting retribution from him, such purposes are tempered by, and in some cases must give way to, purposes of responding to the needs of the child."[19] The JJA "attempts to tread an equatorial line somewhere midway between the poles of rehabilitation and retribution" while the SRA does not focus on rehabilitation and has as its "paramount purpose" punishment.[20] When resolving issues that depend upon the JJA's legislative purpose, we must ensure that our decision "effectuates to the fullest possible extent both the purpose of rehabilitation and the purpose of punishment."[21]

Because T.C. does not dispute that he admitted to the uncharged crimes at issue here, our inquiry is limited to whether juvenile courts may consider *admitted* criminal conduct at a disposition hearing to determine the juvenile's risk of reoffending. We conclude that they can.[22] Courts can best effect the JJA's goal of rehabilitation if they are able to consider a juvenile's admitted crimes when imposing an appropriate disposition because a juvenile's acknowledged

---

[16]*State v. Rice*, 98 Wn.2d 384, 392, 655 P.2d 1145 (1982).

[17]*Id.*

[18]*Id.* at 393.

[19]*Id.*

[20]*Id.*

[21]*Id.* at 394.

[22]Even the SRA allows trial courts "[i]n determining *any* sentence . . . [to] rely on *no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing.*" RCW 9.94A.370(2) (emphasis added). While our analysis is narrow and confined to the facts before us, we affirm our earlier, broader statement that the SRA's real facts doctrine "is not part of the Juvenile Justice Act of 1977." *See State v. Radcliff*, 58 Wn. App. 717, 721 n.4, 794 P.2d 869 (1990).

wrongdoing may clarify for the court the extent and nature of the problem and the rehabilitation the juvenile needs.[23] The facts of T.C.'s case illustrate this point well.

As T.C.'s probation counselor, Stephanie Marks, observed, "[t]he offense for which [T.C.] is currently charged significantly understates the enormity of his actual behaviors."[24] T.C. disclosed to Marks inappropriate sexual behavior with three children under the age of nine, including a two-year-old in diapers, and attempted anal penetration of a cat, all within a relatively short period of time.[25] Timothy Kahn, the social worker who performed T.C.'s special sex offender disposition alternative, wrote that T.C. reported that he liked engaging in this behavior and that he would have continued to offend if he had not been caught. T.C.'s uncharged sexual offenses properly underscored for the court his need for intensive treatment and a disposition well beyond the standard range of 15 to 36 weeks to accomplish the treatment goal.[26]

■ We reject T.C.'s reliance on *State v. Melton*,[27] in which this court stated that imposing a manifest injustice disposition based on a juvenile's pending charges violates the right to presumption of innocence.[28] *Melton* is inapplicable here because the court did not consider pending charges when it imposed a manifest injustice disposition on T.C. The

---

[23]We also note that it would be illogical to exclude uncharged crimes from consideration at juvenile disposition hearings since the probation officer considers and discusses them in making his or her report and recommendation to the court.

[24]Marks recommended a manifest injustice disposition of 52 weeks.

[25]These incidents were in addition to the one involving D.M. The incident with the cat took place between the time that T.C. entered his guilty plea and the disposition hearing. (After T.C. pleaded guilty, his disposition was delayed pending a special sex offender disposition alternative (SSODA) evaluation in accordance with RCW 13.40.160.)

[26]We recognize the concern voiced by T.C.'s counsel that this holding may deter juveniles from being fully honest with counselors and mental health professionals. However, we believe that the significant advantages of a SSODA disposition allowing treatment in the community will ordinarily overcome the juvenile's concern about being honest with evaluators.

[27]63 Wn. App. 63, 817 P.2d 413 (1991), *review denied*, 118 Wn.2d 1016 (1992).

[28]*Id.* at 72. We note that this statement was not supported by authority.

presumption of innocence applies only to *charged* crimes, not to admitted facts that otherwise constitute criminal conduct.[29]

Affirmed.

GROSSE and COX, JJ., concur.

---

[29]"[E]very person *accused of a crime* is constitutionally endowed with an over-riding presumption of innocence, a presumption that extends to every element of *the charged offense*." *State v. Crediford*, 130 Wn.2d 747, 759, 927 P.2d 1129 (1996) (citing *Morissette v. United States*, 342 U.S. 246, 275, 72 S. Ct. 240, 256, 96 L. Ed. 288 (1952)) (emphasis added).