201 P.3d 361 (2009)
STATE of Washington, Appellant,
v.
C.A.E.,[] Respondent.
No. 36739-4-II.
Court of Appeals of Washington, Division 2.
February 10, 2009.
*362 Todd Layton Dowell, Kitsap County Prosecutor's Office, Port Orchard, WA, for Appellant.
David Gene `arthur' Wecker, Attorney at Law, Port Orchard, WA, Brett Andrews Purtzer, Attorney at Law, Tacoma, WA, for Respondent.
HOUGHTON, P.J.
¶ 1 The State appeals a trial court's restitution order based on a juvenile adjudication of guilt.[1] The State argues that the trial court improperly excluded the costs of unperformed but anticipated medical procedures because it misconstrued the restitution definition under RCW 13.40.020(22)[2] and misapplied the prevailing case law. We disagree and affirm.

FACTS
¶ 2 On October 5, 2006, 15-year-old C.E. assaulted 16-year-old I.F., causing severe damage to I.F.'s teeth and gums. As a result of the assault, I.F. underwent multiple medical and dental examinations and dental work, incurring $9,560 in bills (base cost).
¶ 3 In addition to this amount, the State sought restitution for the cost of I.F.'s medical procedures that were not yet performed or billed at the time of the hearing. He needed these procedures to repair teeth and gum injuries and to replace a missing tooth that was knocked out during the assault. At the restitution hearing, the trial court admitted a treatment plan from I.F.'s dental physician, David Houpt DMD, which explained that fixing I.F.'s tooth would require a bridge or an implant to fill the gap. Houpt estimated that a bridge costs $3,276 and that an implant costs $3,843.
¶ 4 According to Houpt, after the bridge or implant, I.F. will need crowns to repair the remaining dental damage. Houpt's plan estimated a $3,936 crown cost. Thus, the total cost of performing I.F.'s remaining dental work is either $7,212 or $7,779, in addition to the base cost, depending on whether I.F. chooses the bridge or the implant option.
¶ 5 C.E. argued that he owed no restitution to I.F. beyond the $9,560 base cost already incurred. He claimed that because the remaining procedures and costs were not yet performed and billed at the time of the hearing, they were not recoverable under the statutory definition of restitution. RCW 13.40.020(22).
¶ 6 At the restitution hearing, the trial court analyzed the definition of "restitution" to determine whether "[a]ctual expenses incurred for medical treatment for physical injury to persons," means that expenses must be performed or billed before they can be considered "incurred." RP at 17. Relying on Division One's holding in State v. Goodrich, the trial court determined that the phrase "actual medical expenses incurred" requires a present obligation to pay for medical treatment. 47 Wash.App. 114, 117, 733 P.2d 1000 (1987). The trial court also determined that this obligation applies only to medical treatment already performed or billed at the time of the hearing.
¶ 7 The trial court further compared the language in RCW 13.40.020(22), which states that for property loss, restitution includes "easily ascertainable damages for injury to or *363 loss of property," with the language addressing medical expenses, which limits restitution to "[a]ctual expenses incurred for medical treatment for physical injury to persons." RP at 17. The trial court concluded that I.F.'s unperformed or unbilled medical expenses were not "incurred" within the restitution definition under RCW 13.40.020(22) and, thus, C.E. had no obligation to pay for such expenses.
¶ 8 The State appeals.

ANALYSIS
¶ 9 The State contends that the trial court erred in determining that the phrase "actual expenses incurred for medical treatment," in RCW 13.40.020(22), includes only those expenses already performed or billed at the time of the hearing. The State asserts that it is immaterial whether I.F.'s medical procedures were performed and billed at the time of the hearing because he had already incurred the obligation to pay for them. The State supports its argument with the following facts: (1) I.F.'s teeth required corrective procedures, (2) Houpt had identified two methods by which to accomplish the necessary repairs, and (3) his medical expenses were neither questionable nor speculative because I.F.'s father testified about the specific costs for these procedures at the restitution hearing.
¶ 10 The imposition of restitution generally lies within the trial court's discretion, and we will not disturb its decision absent an abuse of discretion. State v. Griffith, 164 Wash.2d 960, 965, 195 P.3d 506 (2008). A trial court abuses its discretion when it bases its decision on untenable or unreasonable grounds. State v. Cunningham, 96 Wash.2d 31, 34, 633 P.2d 886 (1981). To the extent that a court bases its ruling on an incorrect interpretation of the law, it bases it on untenable grounds. State v. Quismundo, 164 Wash.2d 499, 504, 192 P.3d 342 (2008).
¶ 11 Trial courts lack inherent power to order restitution. Griffith, 164 Wash.2d at 965, 195 P.3d 506; Goodrich, 47 Wash.App. at 115-16, 733 P.3d 1000. Thus, "[w]hatever power the courts have to order restitution emanates from the Legislature." Goodrich, 47 Wash.App. at 116, 733 P.2d 1000. Accordingly, we must interpret the legislature's intent in enacting RCW 13.40.020(22). To do so, we first look to the statute's plain and ordinary meaning. State v. Bahl, 164 Wash.2d 739, 754, 193 P.3d 678 (2008). When the plain language is unambiguous, the legislative intent is apparent. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).[3] When a statute does not provide a definition, we give its words their common meaning, which may be determined by referring to a dictionary. In re Pers. Restraint of Dalluge, 162 Wash.2d 814, 821 n. 1, 177 P.3d 675 (2008).
¶ 12 Both parties rely on Goodrich, in which the victim sought $451.75 in restitution for past medical treatment and $1,963 for future treatment. 47 Wash.App. at 115, 733 P.2d 1000. On appeal, the court rejected the State's argument that a trial court could order restitution based on testimony of projected future medical expenses. Goodrich, 47 Wash.App. at 116, 733 P.2d 1000.
¶ 13 The Goodrich court, instead, recognized that under former RCW 9.94A.140(1) (1982),[4] a trial court has the power to hold future restitution hearings to account for additional *364 medical expenses incurred by a victim after the entry of the original restitution order. 47 Wash.App. at 116-17, 733 P.2d 1000. The court noted that although "[p]roof of payment is unnecessary before restitution is ordered," under the restitution statute "the victim must have an obligation to pay for the medical treatment necessitated by [the] injury." Goodrich, 47 Wash.App. at 117, 733 P.2d 1000. It remanded the matter to the trial court to determine whether there was "sufficient evidence to demonstrate that the victim is obligated to pay for the medical services which will be performed." Goodrich, 47 Wash.App. at 117, 733 P.2d 1000 (emphasis added).
¶ 14 Despite Goodrich's clear rejection of the State's argument that "projected future medical expenses" are included in the restitution statute, the State here contends that in Goodrich, the use of the future tense, "which will be performed," demonstrates that the court characterized future medical expenses as within the restitution statute if the victim provides sufficient evidence that the treatment is necessary. 47 Wash.App. at 116, 117, 733 P.2d 1000. We do not read Goodrich so broadly. The court's use of the phrase "which will be performed" cannot erase that the court clearly rejected that restitution can include "projected future medical expenses." Goodrich, 47 Wash.App. at 116, 733 P.2d 1000. Goodrich's holding is more properly summarized as "[a]n expense is `incurred' when the victim becomes legally obligated to pay it, even though actual payment has not yet been made." 13B Washington Practice: Criminal Law § 3611, at 337 (1998).
¶ 15 This comports with the restitution statute's plain language. First, the dictionary definition of "incur" supports that the victim be "legally obligated to pay" the medical expenses before he can receive restitution. 13B Washington Practice, § 3611, at 337 (1998). Webster's defines "incur" as "become liable or subject to, bring down upon oneself." Webster's Third New International Dictionary 1146 (2002). Additionally, Black's defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)." Black's Law Dictionary 782 (8th ed.2004). Both definitions require action by the victim to shoulder the payment burden.
¶ 16 Second, as the trial court noted, although the portion of the restitution statute addressing property loss may include certain projected future expenses as "easily ascertainable damages for injury to or loss of property," the language addressing medical expenses, which limits restitution to "[a]ctual expenses incurred for medical treatment for physical injury to persons," is much narrower. RP at 17; RCW 13.40.020(22). The language of the damages provision, unlike the section addressing medical expenses, allows restitution based on repair estimates for work not yet performed. State v. Lohr, 130 Wash.App. 904, 910, 125 P.3d 977 (2005) (approving restitution based on "an estimate from an auto body company to repair" a damaged car), review denied, 158 Wash.2d 1013, 145 P.3d 1215 (2006).
¶ 17 Third, the use of the phrase "actual expenses" also supports our conclusion that the trial court did not abuse its discretion in rejecting I.F.'s restitution claim. To be an "actual expense," it should be "in existence," "present," or "current." Webster's, supra, at 22.
¶ 18 Here, I.F. has not "incurred" the contested medical expense because he has not acted to make himself legally liable for the expenses. Further, although the future costs may be "easily ascertainable," they are not "actual" expenses. Consequently, the trial court did not abuse its discretion in denying I.F. restitution for future dental work.
¶ 19 We note, however, that the additional protections that were available to the victim in Goodrich are absent here. Whereas Goodrich was sentenced as an adult under chapter 9.94A RCW, as a juvenile, C.E. was ordered to pay restitution under chapter 13.40 RCW, which codifies the Juvenile Justice Act of 1977 (JJA). Goodrich, 47 Wash. App. at 116-17, 733 P.2d 1000. The JJA is a separate and distinct statutory scheme from the adult sentencing scheme of the sentencing reform act of 1981 (SRA). See State v. T.C., 99 Wash.App. 701, 706-07, 995 P.2d 98 (2000). Under chapter 9.94A RCW, the trial court retains jurisdiction over adult offenders *365 for at least 10 years after the original proceeding, during which time the trial court may modify the amount, the terms, and the conditions of the restitution order. RCW 9.94A.750(4). The Goodrich court noted the 10-year modification provision "`enables the court to order restitution for the actual medical expenses incurred'" at a later time, within the 10-year window, thus eliminating the urgency to factor all medical expenses into a single award at the original restitution hearing. 47 Wash.App. at 117, 733 P.2d 1000.
¶ 20 Under the JJA, however, there is no statutory authorization for victims to request modification of a restitution order. Thus, unlike the victim in Goodrich, I.F. has no opportunity to request additional restitution as he incurs additional expenses. Griffith, 164 Wash.2d at 965, 195 P.3d 506 ("A court's authority to impose restitution is statutory."); Goodrich, 47 Wash.App. at 115-16, 733 P.2d 1000 (stating that courts lack the inherent power to order restitution); State v. Hefa, 73 Wash.App. 865, 866, 871 P.2d 1093 (1994) (recognizing that the "authority to order restitution is purely statutory"). We are mindful of the differing goals in the JJA and the SRA, but we nonetheless call on the legislature to consider whether it should remedy these contradictory and potentially unfair results.[5]
¶ 21 Affirmed.
I concur: ARMSTRONG, J.
HUNT, J. (dissenting).
¶ 22 I respectfully dissent. The issue of statutory interpretation in this case is a close call, with compelling arguments by both sides. I find no flaw in the majority's holding that the plain language of RCW 13.40.020(22) limits the definition of "restitution" to money the victim has already paid to mitigate injuries that the juvenile defendant caused and, thus, must reimburse the victim. I disagree, however, that in using the passive voice and the past tense "incurred," the legislature intended to prevent the trial court from considering already-identified expenses for necessary, future phased treatments, impossible to complete before the restitution hearing, which occurred before the prerequisite healing from earlier treatments.

I. Plain Language of Statute
¶ 23 I, too, look to the plain language of the statute, focusing on the order in which the legislature arranged the "limiting" words in the sentence at issue:
"Restitution" means financial reimbursement by the offender to the victim, and shall be limited to ... actual expenses incurred for medical treatment for physical injury to persons.

RCW 13.40.020(22) (emphasis added). "Actual" is an adjective modifying the noun "expenses"; it is not an adverb modifying the passive verb "incurred." Furthermore, the legislature neither converted the adjective "actual" into an adverb nor placed it next to the verb "incurred" to modify it. Had the legislature written "expenses actually incurred," then the majority would find more support for its interpretation of this statutory phrase. But the legislature did not phrase the statute in this manner; and it did not limit restitution to expenses "actually incurred" at the time of the restitution hearing.
¶ 24 Instead, by limiting restitution to "actual expenses incurred" at the time of the restitution hearing, the legislature used the adjective "actual" to distinguish a victim's concrete and identifiable expenses from expenses that are speculative or unverified. Here, the victim's expenses were identifiable, quantifiable, and fixed at the time of the restitution hearing, even though some of the teeth restoration treatments could not occur before interim healing of the victim's mouth and jaw.
¶ 25 During the restitution hearing, IF's father testified about the specific cost of procedures that were necessary to complete IF's planned, phased treatment. The treatment plan and corresponding bill and estimate, which the superior court admitted as Exhibit 2 at 10, proposed sequential orthodontic procedures and quoted their approximate costs. *366 The bill also identified known procedures, for which the court could order restitution, even though some uncertainty remained at the time about which procedure would be best-suited to repair IF's injuries.
¶ 26 Because CE broke the victim's jaw, knocked out one tooth, and damaged several other teeth, the oral surgeon determined the following necessary course of treatment: (1) surgery/repair to the jaw, which costs approximately $9560, followed by a period of healing of the jaw bone before undertaking the second step; (2) depending on the jaw's healing progress, either a tooth implant or a bridge (determined by whether enough bone remains in the newly repaired jaw to accept an implant), which costs $3843 or $3276, respectively; and (3) crowns, following a period of healing after the implant to replace the knocked-out tooth, which cost $3936. Exhibit 2 at 1; 10, reproduced in part below, shows that at the time of the restitution hearing, the victim had undergone the first phase of his treatment and that his mouth was in the process of healing before phases two and three could occur. IF's treatment plan reads as follows:

 [IF] / Restitution
 Dr. Paul Greenwault, DDS Initial second opinion $101.00
 Dr. Seigried Nauman, DDS, MS Braces $5537.00
 Dr. Michael Huey, DMD Root Canals 3 ea. $3290.00
 Dr. David Houpt, DMD General Dentistry $632.00
 Implant (if enough bone) $3843.00
 Crowns $3936.00
 Restitution as of 8/15/07 $17,339.00

*367 
¶ 27 At the time of the restitution hearing, IF knew that he would receive the second and third phases of treatment to repair the injuries to his jaw and teeth; he knew the costs for these sequential phases. These costs, although not yet paid by the victim, were "existing in fact or reality" at the time of the restitution hearing; therefore, they were "actual" under the language of the statute, even if subject to the possibility of post-surgery adjustment. See Webster's II New College Dictionary 12 (1999).

II. Legislative Intent
¶ 28 To the extent that the two meanings of "actual" and the legislature's placement and use of the word create ambiguity, we look to legislative intent. See Nat'l. Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999). The "statute's plain language and ordinary meaning" serve *368 as the starting point in our analysis. Id. When the plain language is unambiguous, or when the statutory language admits of only one meaning, the legislative intent is apparent, and we will not construe the statute otherwise. State v. JP, 149 Wash.2d 444, 450, 69 P.3d 318 (2003). When the legislature provides no statutory definition, however, we give statutory words their common meaning, which may be determined by referring to a dictionary. Dahl-Smyth, Inc. v. City of Walla Walla, 148 Wash.2d 835, 842-43, 64 P.3d 15 (2003) (citing Budget Rent A Car Corp. v. Dep't of Licensing, 144 Wash.2d 889, 899, 31 P.3d 1174 (2001)).

A. Dictionary Definition of "Actual"
¶ 29 Webster's Dictionary provides two definitions for the adjective "actual." Although the second definition tends to support CE's and the majority's reading of the statute, the first definition supports the State's reading of the statute, which I adopt in this dissent. The first definition, "existing in fact or reality,"[6] allowed the trial court to consider the victim's bill for past and future expenses to treat the injuries that CE inflicted on the victim's teeth and gums during the assault. Webster's II New College Dictionary 12 (1999).

B. Other Terms in Same or Related Statutes
¶ 30 In determining legislative intent, we also look to other terms in the same or related statutes. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11-12, 43 P.3d 4 (2002) (meaning can be discerned by what the legislature has said in related statutes, which discloses legislative intent about the provision in question); Connick v. City of Chehalis, 53 Wash.2d 288, 290, 333 P.2d 647 (1958) (in construing a legislative enactment, the court should consider the entire sequence of all statutes relating to the same subject matter) (citing State ex rel. Washington Mut. Sav. Bank v. City of Bellingham, 183 Wash. 415, 421, 48 P.2d 609 (1935)).

1. Preceding clause in same statute
¶ 31 We should look first to the clause preceding the phrase at issue to shed additional light on the legislature's intent in choosing the words "actual expenses incurred": Financial reimbursement by the offender to the victim "shall be limited to easily ascertainable damages for injury to or loss of property." RCW 13.40.020(22) (emphasis added). In this preceding clause, the legislature did not limit damages for injury to property to the victim's current out-of-pocket expenses; instead, the legislature focused on costs that were "easily ascertainable." In other words, such expenses subject to restitution need not be exact or already paid by the victim; they need only be identifiable. This preceding language in the property injury clause thus suggests that the legislature's use of the term "actual expenses incurred" in the following personal injury clause similarly connotes the first definition of "actual" listed above: "existing in fact or reality." Webster's II New College Dictionary 12 (1999).

2. Adult restitution statute
¶ 32 Under RCW 9.94A, the superior court retains jurisdiction over adult offenders for at least 10 years after the original proceeding, during which time the court may increase the restitution amount and modify the terms and conditions of the restitution order.[7] RCW 9.94A.750(4). I acknowledge that, as the majority notes, the process for ordering juveniles to pay restitution is not identical to that for adults. Nevertheless, the adult restitution statute illuminates the legislature's, intent for the juvenile restitution statute, RCW 9.94A, and, thus, provides guidance for interpreting the meaning of the phrase "actual expenses incurred" in the juvenile restitution statute, RCW 13.40.020(22).
¶ 33 In State v. Goodrich, for example, Division One of our court analyzed the same *369 issue of whether the trial court lacked statutory authority to order restitution for medical expenses that the victim expected to pay but which had not yet been performed or billed. 47 Wash.App. 114, 733 P.2d 1000 (1987) (holding that for expenses to be "incurred," there must be a present obligation to pay for the treatment that is necessitated by the injury). The Goodrich court stressed the importance of this 10-year modification provision to its determination of the case; it concluded that the provision "enables the court to order restitution for the `actual medical expenses incurred'" at a later time, within the 10-year window, thus eliminating the urgency and need to factor all medical expenses into a single award at the original restitution hearing. Goodrich, 47 Wash.App. at 117, 733 P.2d 1000.
¶ 34 Also, in State v. Duback, Division Three of our court held that adult defendants could be ordered to make restitution for ongoing counseling based on estimates of the "typical period of time required for counseling" and of the "average cost" of such counseling, including ongoing counseling that had not ended at the time of the restitution hearing.[8] 77 Wash.App. 330, 333, 891 P.2d 40 (1995) (court need not estimate future counseling costs at the restitution hearing because a victim could later choose to begin counseling and to set costs anytime within the 10-year modification period under RCW 9.94A).
¶ 35 Similarly, in State v. Blanchfield, we held that the lower court did not abuse its discretion in ordering an adult defendant to pay restitution for orthopedic "follow-up" treatment, based on itemized billing from the Crime Victims Compensation Program and the victim's statements about the need for ongoing treatment. 126 Wash.App. 235, 242, 108 P.3d 173, review denied, 155 Wash.2d 1020, 124 P.3d 659 (2005). Although most of the victim's treatment had been completed and the expenses had billed at the time of the restitution hearing, we did not limit the restitution amount to past expenses alone. Id. Instead, we affirmed the lower court's inclusion of as yet unknown expenses for the victim's "follow-up" treatment. Id.
¶ 36 In sum, by holding adult offenders accountable to make restitution for actual expenses incurred, the Legislature intended that sentencing courts include the costs of victims' follow-up treatments and ongoing procedures as part of the restitution award, even when such procedures do not actually occur until after the restitution hearing.

3. Juvenile restitution statute
¶ 37 The Juvenile Justice Act (JJA) operates as a separate and distinct statutory scheme from the Sentencing Reform Act provisions for restitution by adult offenders. See State v. TC., 99 Wash.App. 701, 706-07, 995 P.2d 98 (2000) (citing State v. Rice, 98 Wash.2d 384, 392, 655 P.2d 1145 (1982)). Consistently, the purposes underlying the juvenile system and the procedures designed to give effect to those purposes differ significantly from the purposes and procedures of the adult system. TC, 99 Wash.App. at 706-07, 995 P.2d 98. Unlike the Sentencing Reform Act, the JJA contains no 10-year provision during which victims may request court-ordered modification of restitution for later-incurred expenses to mitigate injuries caused by the crime.
¶ 38 Given that juvenile offenders quickly age-out of the juvenile system, a later modification, even if available, would be impractical and contrary to the goal of rehabilitating juvenile offenders while they remain in the short-term juvenile justice system. Here, the trial court ordered CE to pay restitution in the context of a juvenile proceeding. As a juvenile, CE had to pay restitution under RCW 13.40, which codifies the Juvenile Justice Act of 1977.
¶ 39 Although the adult Goodrich court could simply suspend discussion of the unperformed medical costs until a future modification hearing, IF did not have this option. Unlike the victim in Goodrich, IF had no opportunity to request additional restitution *370 as it might arise after the restitution hearing. Instead, IF had only one opportunity to establish and to request restitution for all of the medical procedures and stages of treatment necessary to repair the injuries that CE caused during the beating.
¶ 40 Furthermore, the Goodrich court treated the term "incurred" as something that assumes a liability or an obligation to pay. 47 Wash.App. at 116-17, 733 P.2d 1000. Interpreting the term "incurred," the court focused on when the obligation to pay for treatment arose, as opposed to when the actual treatment occurred. In so doing, the Goodrich court indicated that the phrase "actual expenses incurred" may apply to future medical expenses, "[i]f there is sufficient evidence to demonstrate that the victim is obligated to pay for the medical services which will be performed, and there is adequate proof of the amount of the obligation." 47 Wash.App. at 117, 733 P.2d 1000. In such situations, Division One concluded that an award of restitution for expected treatment is proper.
¶ 41 If "actual expenses incurred" included court-ordered restitution for future treatments in Goodrich, then it is reasonable to conclude that the legislature intended the phrase to mean the same in the juvenile context,[9] especially in light of the victim's inability to seek future restitution modification if his assailant fortuitously happens to have been a juvenile rather than an adult.[10] Here the trial court's interpretation of the phrase "actual expenses incurred" produced a strained, and incongruous result that denied restitution to IF, in spite of the record's containing sufficient evidence of the victim's obligation to pay for future medical treatment to repair the damage wrought by CE. Surely the legislature did not intend to release juvenile offenders from liability for the full extent of the injuries they cause victims merely because of the offenders' juvenile status. This incongruous result also contradicts the main goal of the juvenile restitution statute, which seeks to compensate victims fully and to hold juvenile offenders accountable for their actions. See State v. Donahoe, 105 Wash.App. 97, 100, 18 P.3d 618 (2001).

C. Interpret Statutes Consistent with Legislative Intent
¶ 42 We construe juvenile restitution provisions liberally to achieve their purpose and to promote the fundamental goals of the Juvenile Justice Act. Id.; State v. Landrum, 66 Wash.App. 791, 797, 832 P.2d 1359 (1992) (citing State v. Bennett, 63 Wash.App. 530, 533, 821 P.2d 499 (1991)). In furtherance of these goals, we must interpret restitution statutes in such a way as to avoid unlikely, strained, or absurd results. Landrum, 66 Wash.App. at 797, 832 P.2d 1359 (citing State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990)). In addition, we adhere to the well-established principle of statutory interpretation that the law favors rational and sensible construction. See e.g., State v. McDougal, 120 Wash.2d 334, 351, 841 P.2d 1232 (1992); Cooper's Mobile Homes, Inc. v. Simmons, 94 Wash.2d 321, 330, 617 P.2d 415 (1980) (when interpreting an unclear statute, the court must consider all things within the legislation's ambit, including those things and circumstances falling within the spirit of the law even if they do not fall within the provision when standing alone).
¶ 43 Is it reasonable or sensible to construe the same phrase "actual expenses incurred" differently in the juvenile and adult restitution contexts, such that whether the victim recovers restitution for future treatments necessary to repair severe injuries from a beating hinges solely on the fortuity of whether the victim's assailant is a juvenile or an adult? This cannot have been the legislature's intent.
¶ 44 In my view, the legislature could not reasonably have intended to preclude the trial court's consideration of restitution to *371 complete the medical treatment necessary to repair the severe injuries that CE inflicted on the victim's mouth. Such legislative intent is all the more unlikely in light of the fact here that, due to the severity of the injuries CE inflicted, the victim's treatments must be phased and sequenced with interim healing periods such that the restorative treatments could not all be completed before the restitution hearing.
¶ 45 For the foregoing reasons, I would (1) reverse the trial court's decision to deny IF's request for full restitution, and (2) instruct the court, on remand, to exercise its discretion in setting restitution and to consider the actual expenses necessary for treating the severe injuries that CE caused to the victim's mouth, teeth, and gums.
NOTES
[] It is appropriate to provide some confidentiality in this case. Accordingly, it is hereby ordered that initials will be used in the case caption and in the body of the opinion to identify the parties and other juveniles involved, except for governmental agencies.
[1] C.E. pleaded guilty to second degree assault.
[2] RCW 13.40.020(22) states:

"Restitution" means financial reimbursement by the offender to the victim, and shall be limited to easily ascertainable damages for injury to or loss of property, actual expenses incurred for medical treatment for physical injury to persons, lost wages resulting from physical injury, and costs of the victim's counseling reasonably related to the offense.
[3] Additionally, courts construe juvenile restitution provisions liberally to achieve their purpose, which is to compensate victims and to hold juveniles accountable for their actions. State v. Donahoe, 105 Wash.App. 97, 100, 18 P.3d 618 (2001). Providing for the payment of restitution in juvenile cases promotes the fundamental goals of the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW. State v. Landrum, 66 Wash.App. 791, 797, 832 P.2d 1359 (1992).
[4] RCW 9.94A.750(4) (recodified in 2001 and formerly RCW 9.94A.140), states, in relevant part:

For the purposes of this section, the offender shall remain under the court's jurisdiction for a term of ten years following the offender's release from total confinement or ten years subsequent to the entry of the judgment and sentence, whichever period is longer.... The portion of the sentence concerning restitution may be modified as to amount, terms and conditions during either the initial ten-year period or subsequent ten-year period if the criminal judgment is extended, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime.
[5] The detailed dissent in this case highlights the problems caused by the current statutory scheme and the financial burdens it places on I.F. and other similarly-situated victims.
[6] The second definition of "actual""existing at the present or at the time"supports the majority's reading of the statute. Webster's II New College Dictionary 12 (1999).
[7] In contrast, the JJA contains no 10-year modification provision.
[8] Although Division Three reversed the lower court's restitution order on other grounds, Division Three concluded that the restitution amount could include the cost of ongoing treatment as long as the victim made this request within the proper statutory time period. Duback, 77 Wash. App. at 333, 891 P.2d 40.
[9] Although the majority reads Goodrich as clearly rejecting restitution for "projected future medical expenses," CE would still owe of duty of restitution under that interpretation because IF's unperformed medical expenses, although "future," were known and identifiable, not merely "projected" at the time of his restitution hearing.
[10] Again, I note that unlike the case for adult defendants, CE's status as a juvenile offender effectively prevents IF from seeking future restitution or modifying the order as later expenses arise.