[No. 22785-8-I. Division One. May 21, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. DIANNA
LYNE LEWIS, *Appellant*.

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Dean S. Lum, Deputy,* for respondent.

WINSOR, J.—Dianna Lewis appeals a portion of a restitution order requiring her to reimburse an insurance company for future earnings losses of a deceased victim and to compensate a surviving injured victim for future retirement income losses due to his use of sick leave. We reverse the portion of the order appealed, and remand for further proceedings.

Lewis entered an *Alford*[1] plea to one count of vehicular homicide. As a part of her plea agreement, Lewis conceded the following as "real facts":

> [T]he defendant's vehicle struck another vehicle, killing Diane Marie Primacio; the driver of the other vehicle, Richard Primacio, also suffered significant injuries.

Lewis also agreed to pay restitution, as follows: (1) "burial costs, other incidental damages arising out of the death of Diane Primacio"; and (2) "for injuries to Richard Primacio (medical costs, etc.)".

As one item of restitution, the trial court ordered that Lewis reimburse Transamerica Life Insurance Company for $50,000 it paid to the estate of Mrs. Primacio, apparently as future earnings losses. The court also ordered Lewis to pay $2,640 to Richard Primacio to compensate him for use

---

[1] *See North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

of 1,015 hours of sick leave. By the court's calculations, Primacio's future retirement pay will be reduced by $264 per year for 10 years because of his use of sick leave after the accident.

We address two issues: first, whether restitution may include a homicide victim's future earnings losses, and, second, whether restitution may include future retirement income losses resulting from an injured victim's use of sick leave.

I

RCW 9.94A.142 states in pertinent part:

(1) When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within sixty days and shall set the terms and conditions under which the defendant shall make restitution. Restitution ordered by a court pursuant to a criminal conviction shall be based on *easily ascertainable damages* for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and *lost wages resulting from injury*. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the costs of counseling reasonably related to the offense. . . .

(2) Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record. . . .

(Italics ours.) Lewis contends that future earnings losses of a deceased victim cannot be classified under the statute as "lost wages resulting from injury" and that they are too speculative in nature to qualify as "easily ascertainable damages". We agree.

While the decision to impose restitution is one within the trial court's discretion, the power to impose restitution derives entirely from the statute. *See State v. Nelson,* 53 Wn. App. 128, 138, 766 P.2d 471 (1988). In *State v. Mark,* 36 Wn. App. 428, 433, 675 P.2d 1250 (1984), the court stated:

> Though . . . there is a broad rehabilitative purpose to the restitution requirement, restitution must conform to the statutory language. It is for the Legislature to define the authority within which the trial court's discretion will be exercised in imposing restitution. . . .

If the statutory provisions are not followed, the action of the trial court is void. *State v. Goodrich,* 47 Wn. App. 114, 116, 733 P.2d 1000 (1987).

We are not persuaded that future earnings losses classify either as "easily ascertainable damages" or as "lost wages resulting from injury." *See* RCW 9.94A.142(1). The facts here aptly illustrate the complexity involved in calculating future earnings losses. At the time of her death, the victim was 42 years old and earning $30,000. In the civil context, many variables would appropriately factor into the determination of Mrs. Primacio's "lost future earnings". The court would consider evidence of Mrs. Primacio's health, life expectancy, job security, possibilities for advancement, and the appropriate discount and inflation factors for determining the present value of the future wages. Such evidence is normally the subject of extensive expert testimony in civil damage actions, and the final decision is a judgment call, often difficult to make. Such a determination is hardly "easily ascertainable". Moreover, our criminal process is ill–equipped for such a task: criminal trial counsel are usually unfamiliar with civil damage concepts, and criminal dockets are already overburdened.

While no Washington cases have directly addressed this issue,[2] we find the reasoning of the Oregon Supreme Court persuasive. In *State v. Stalheim,* 275 Or. 683, 552 P.2d 829, 831, 79 A.L.R.3d 969 (1976), the defendant was convicted of

---

[2]Restitution for some other types of future losses has been upheld. *See State v. Barr,* 99 Wn.2d 75, 79–80, 658 P.2d 1247 (1983) (victim's obligations of child support and maintenance under decree of dissolution); *State v. Gunderson,* 74 Wn.2d 226, 230, 444 P.2d 156 (1968) ($7,500 to deceased victim's parents), *overruled on other grounds in State v. Gosby,* 85 Wn.2d 758, 767, 539 P.2d 680 (1975); *State v. Morgan,* 8 Wn. App. 189, 504 P.2d 1195 (1973) ($1,500 to assault victim for pain and suffering); *but see Goodrich,* 47 Wn. App. at 116–17 (statute does not allow restitution for future medical expenses not yet incurred).

criminally negligent homicide and ordered to pay $2,500 restitution to a survivor as compensation for loss of his family. 552 P.2d at 830. No hearing was held to determine the amount of the survivor's loss; the trial court simply accepted the amount of restitution suggested by the survivor's attorney. The Oregon Supreme Court found that the restitution was improperly imposed. It stated:

> If the statute is interpreted broadly as to permit the imposition of unliquidated damages, thus including such losses as pain and suffering, decreased earning capacity, loss of consortium and the like, the trial judge will be forced to make evaluations of losses usually reserved to civil juries. In the usual case, the trial judge will not have the benefit of pleadings which frame the issues nor the testimony of witnesses to develop evidence relevant to the loss resulting from the defendant's wrongdoing. Thus, the trial judge is left in the difficult if not impossible position of having to assign a value to a loss he knows little about. . . . [W]e find it highly inappropriate to assign this task to a judge presiding over a criminal trial.

(Footnotes omitted.) *Stalheim,* 275 Or. at 686–87. The Oregon Legislature later codified part of the *Stalheim* holding by limiting restitution to "pecuniary damages", which are defined as "the money equivalent of property . . . harmed, and losses such as medical expenses." *State v. Dillon,* 292 Or. 172, 176, 637 P.2d 602, 605–06 (1981) (quoting ORS 137.103(2)); *see State v. Hart,* 299 Or. 128, 699 P.2d 1113, 1117 (1985).

 Washington's statute is similar to Oregon's in that it limits restitution to "easily ascertainable" damages and specifically prohibits restitution for intangible losses. RCW 9.94A.142(1). By prohibiting restitution for damages resulting from mental anguish, pain and suffering, and other intangible losses, the Legislature has evinced an intent to substantially limit criminal restitution to damages that do not normally require involved or sophisticated proof. That intent is further evidenced by the statute's explicit reference to civil damages: "This section does not limit civil remedies or defenses available to the victim, survivors of the victim, or defendant." RCW 9.94A.142(4).

■ Nor do we find that future earnings losses classify as "lost wages resulting from injury". The Legislature has chosen to phrase "lost wages" in the past tense, strongly suggesting it was only meant to cover expenses already incurred. Given the very speculative and complex nature of future earnings losses, we decline to read the statute to include such losses as a permissible item of criminal restitution. If the Legislature wishes that this determination be included in the criminal sentencing process, it can so provide.[3] For now, this damage remedy is left to civil litigation.

We reverse the portion of the restitution order requiring Lewis to pay future earnings losses of Mrs. Primacio.

## II

■ Lewis also argues that RCW 9.94A.142 does not authorize restitution based on the loss of future retirement income resulting from an injured victim's use of sick leave. The State concedes reversible error on this issue. *See Goodrich*, 47 Wn. App. at 116–17. Accordingly, we remand on this issue.

We delete from the order of restitution the award of future earnings losses and the award of lost future retirement income based on Mr. Primacio's use of sick leave. The case is remanded for a determination of whether Mr. Primacio has retired and whether deductions have been made from his retirement income due to taking sick leave.

COLEMAN, C.J., and BAKER, J., concur.

---

[3]The Legislature would probably consider the burdens on the court, including problems of proof and speculation, as well as the practical realities of whether convicted criminals will be able to pay substantial restitution.