[No. 13465-9-II. Division Two. November 4, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. BRADLEY A. YOUNG, *Appellant*.

*Charles K. Wiggins* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Pamela B. Loginsky* and *M. Peter Philley, Deputies,* for respondent.

MORGAN, J. — Bradley A. Young appeals from a restitution order entered pursuant to his conviction of two counts of vehicular homicide. We affirm.

On April 17, 1985, Young drove his truck while intoxicated. It went out of control and the ensuing crash killed his two passengers, Curtis Pelham and Vince Setzer. Pelham was divorced but left two children, approximately 7 and 4.

On October 21, 1985, Young was convicted of two counts of vehicular homicide. Judge Roper sentenced him on January 8, 1986. The standard range called for prison, but for reasons not questioned here, Judge Roper granted an exceptional sentence downward. Young was ordered to serve 12 months per count in a work release program, to run consecutively. He was also ordered to pay as restitution Pelham's child support obligations of $250 per month.

On February 27, 1986, Judge Roper held a restitution hearing. Young asked that the previous order assessing child support be reversed. Judge Roper declined, explaining that "a primary rationale" for not sending Young to prison had been the utilization of his earning capabilities to replace the child support lost by Pelham's children due to Pelham's death.

At the same hearing, Young asked that insurance proceeds paid by his liability insurer to the Pelham and Setzer families be credited against the child support and funeral expenses that he was being ordered to pay as restitution. Judge Roper declined credit against child support, saying that child support "is a closed issue". He allowed credit against funeral expenses, to the extent that the insurance proceeds had been intended to cover such expenses.

In 1987, Young's conviction was reversed by this court. *State v. Young,* 48 Wn. App. 406, 739 P.2d 1170 (1987). Judge Hanley presided at the retrial, and Young was again convicted of the same two counts.

On February 10, 1988, Judge Hanley resentenced Young to 12 months in work release on each count. As clarified by a later order, the sentences were to run concurrently. Judge Hanley reimposed Judge Roper's restitution order, "subject to any credits".

The matter of credits did not come up again until May 23, 1989. On that day, Judge Hanley heard argument from both counsel about whether proceeds paid by Young's insurer should be credited against the child support obligation. The judge took the issue under advisement and, on September 13, 1989, issued a written decision saying that Judge Roper's previous refusal to credit such proceeds against child support "was adopted by this department and constitutes the law of the case." A formal restitution order was entered in November 1989, and this appeal followed.

On appeal, Young argues (1) that restitution for loss of future child support payments is an unconstitutional forfeiture of estate proscribed by article 1, section 15 of the Washington Constitution; (2) that RCW 9.94A.140 does not authorize restitution for future child support payments; (3) that Judge Hanley was required to exercise discretion when ordering restitution, but failed to do so; and (4) that the trial court was required to reduce whatever restitution obligation he owed by the amount of the insurance payments received by the victims' families. We consider each argument separately.

ARTICLE 1, SECTION 15

In English common law, forfeiture resulted from conviction for felonies and treason, as well as from other causes. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 681-82, 40 L. Ed. 2d 452, 466-67, 94 S. Ct. 2080, *reh'g denied*, 417 U.S. 977 (1974). As the United States Supreme Court explained in *Calero-Toledo,* at 682:

> The convicted felon forfeited his chattels to the Crown and his lands escheated to his lord; the convicted traitor forfeited all of his property, real and personal, to the Crown. The basis for these forfeitures was that a breach of the criminal law was an offense to the King's peace, which was felt to justify denial of the right to own property.

(Citations omitted.) *See also In re Sego*, 7 Wn. App. 457, 463-64, 499 P.2d 881 (1972) (quoting *Avery v. Everett*, 110

N.Y. 317, 324, 18 N.E. 148 (1888)), *rev'd on other grounds*, 82 Wn.2d 736, 513 P.2d 831 (1973). In essence, the convicted felon was considered to be "civilly dead". *In re Walgren*, 104 Wn.2d 557, 569, 708 P.2d 380 (1985).

In the case of treason, forfeiture was perpetual. As the Court said in *Wallach v. Van Riswick*, 92 U.S. (2 Otto) 202, 210, 23 L. Ed. 473, 476 (1875):

> In England, attainders of treason worked corruption of blood and perpetual forfeiture of the estate of the person attainted, to the disinherison of his heirs, or of those who would otherwise be his heirs. Thus innocent children were made to suffer because of the offence of their ancestor.

When the United States Constitution was being drafted, its framers wanted to limit the perpetual aspect of forfeitures for treason. As the United States Supreme Court said in *Wallach*, at 210:

> When the Federal Constitution was framed, this was felt to be a great hardship, and even rank injustice. For this reason, it was ordained that no attainder of treason should work corruption of blood or forfeiture, except during the life of the person attainted.

The framers' intent was manifested in U.S. Const. art. 3, § 3, cl. 2. It provides:

> The congress shall have power to declare the punishment of treason, but no attainder of treason shall work corruption of blood, or forfeiture except during the life of the person attainted.

By its terms, article 3 does not prohibit forfeiture during the lifetime of a traitor. *Wallach*; *Calero-Toledo*, 416 U.S. at 683.

Article 1, section 15 of the Washington Constitution is related to U.S. Const. art. 3, § 3, in that both deal with forfeitures. *See Leonard v. Seattle*, 81 Wn.2d 479, 485, 503 P.2d 741 (1972). Const. art. 1, § 15, however, prohibits more than just the perpetual aspect of forfeitures. It provides:

> No conviction shall work corruption of blood, nor forfeiture of estate.

*See also* RCW 9.92.110. Still, when construed in light of its common law history, Const. art. 1, § 15 only prohibits forfei-

ture of a convict's estate on the ground that he or she is incapacitated from owning property due to conviction. *See Leonard v. Seattle, supra.*[1] It does not prohibit forfeiture for a variety of other rational and legitimate purposes, such as punishing the defendant to a degree commensurate with the crime (fines); rehabilitating the defendant by requiring restitution or other monetary payments, *cf. State v. Barr*, 99 Wn.2d 75, 77, 658 P.2d 1247 (1983) (Const. art. 1, § 15 not raised); or depriving the defendant of the fruits or instrumentalities of the crime. *Cf. Crape v. Mount*, 32 Wn. App. 567, 648 P.2d 481 (permitting forfeiture of instrumentalities as against due process argument; Const. art. 1, § 15 not raised), *review denied*, 98 Wn.2d 1008 (1982); *Calero-Toledo v. Pearson Yacht Leasing Co., supra* (same); *United States v. Premises Known as 2639 Meetinghouse Rd.*, 633 F. Supp. 979, 993 (E.D. Pa. 1986) (U.S. Const. art. 3, § 3 inapplicable to civil forfeiture proceeding).

The restitution order in this case was not premised on the defendant's being incapacitated from owning property due to conviction. Rather, it was imposed to achieve various legitimate and reasonable goals of sentencing, including compensating the families of the victims and punishing the defendant. As a result, it did not violate Const. art. 1, § 15.

## RCW 9.94A.140

■ Restitution not constitutionally prohibited must still be authorized by statute before it can be imposed. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). Thus, Young argues that RCW 9.94A.140 did not authorize the court to impose Pelham's future child support payments as restitution.

---

[1]In *Leonard*, a retired police officer started drawing his police pension in 1967. In 1971, he was convicted of a federal felony. At sentencing, the federal court did not purport to affect his pension. Later, however, the trustees of the public pension fund discontinued it in accordance with a state statute purporting to allow them to do that. The trustees' action had nothing to do with the particular crime, and was the result of nothing more than Leonard's status as a felon. Thus, the action and the statute on which it was based violated Const. art. 1, § 15.

■ Young is not entitled to raise the argument. The doctrine of invited error prohibits a party from setting up error in the trial court and then complaining of it on appeal. *State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990); *State v. Young*, 48 Wn. App. 406, 414-15, 739 P.2d 1170 (1987). At the May 23, 1989, restitution hearing before Judge Hanley, Young's counsel said:

> we accept the fact that the child support obligation[s] are a legitimate aim of restitution . . . I'm not saying that there shouldn't be an award of child support. And Judge Roper, I think, was sound in his position that restitution should encompass child support. . . ."

By these remarks, Young agreed to pay child support, and he invited any error embodied in the resultant order requiring him to do that.

Furthermore, Young's argument is not well taken. RCW 9.94A.140 governs restitution ordered for crimes committed prior to July 1, 1985. It provides in pertinent part:

> (1) . . . Restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses . . ..
> (2) Restitution may be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property. . . .

■ This statute vests trial courts with the authority to order that the defendant in a vehicular homicide case pay as restitution the victim's future child support payments that were reduced to judgment before the victim's death.[2] In reaching this conclusion, we reject Young's arguments concerning the wording of the statute, and we explicitly rely on

---

[2] By emphasizing that Pelham's child support payments had been reduced to judgment before his death, we do not mean to imply that future child support could not be ordered where there is no such judgment. Washington's use of presumptive child support schedules might or might not make lost child support "easily ascertainable" without a judgment. *See* RCW 26.19. We have no occasion to consider that question today.

*State v. Barr, supra,* notwithstanding that it was decided prior to the Sentencing Reform Act of 1981 (SRA).

Young argues that the "statutory duty of Mr. Pelham to support his children was not in any sense 'property.' " The issue, however, is not whether Pelham's duty to pay child support is "property"; rather, it is whether his children's corresponding right to receive support is "property". More importantly, the issue is not whether a child's right to receive support from a parent is "property" before that right is reduced to judgment. Because the right here had merged in a judgment requiring payments of $250 per month, the issue is whether a judgment requiring monthly child support payments is "property" for purposes of the restitution provisions of the SRA. We hold that a judgment for child support payments is "property" for purposes of RCW 9.94A.140, and that causing the death of the judgment debtor causes a "loss of property" for purposes of the same statute.

Young also argues that future child support payments are "intangible losses" for which restitution cannot be awarded. Necessarily, the argument is also that future child support payments are not "easily ascertainable damages" for which restitution can be awarded.

The loss of future child support payments is not an intangible loss within the meaning of the statute. The rule of ejusdem generis provides that specific terms modify and restrict general terms where both are used in sequence. *Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 111, 676 P.2d 466 (1984) (quoting *Dean v. McFarland,* 81 Wn.2d 215, 500 P.2d 1244, 74 A.L.R.3d 378 (1972)). RCW 9.94A.140(1) proscribes restitution for "mental anguish, pain and suffering, and other intangible losses". Given this sequence, it is apparent that the words "intangible losses" were intended to refer to nonpecuniary loss. They do not encompass pecuniary loss in the nature of medical bills or lost wages, RCW 9.94A.140(1), or in the nature of lost monthly child support payments previously reduced to judgment.

Further, loss of future child support payments previously reduced to judgment constitutes "easily ascertainable damages" within the meaning of the statute. The amount of such loss depends primarily on two factors: the terms of the judgment, and whether the children are still dependents. Each of those matters is simple to ascertain, and once each is known, the criminal court is in a position to set restitution insofar as lost child support is concerned.[3]

Our conclusion that RCW 9.94A.140 authorizes the child support restitution ordered in this case is supported by *State v. Barr, supra.* In *Barr,*[4] the trial court, as a condition of probation, ordered a person convicted of negligent homicide to pay future child support to the victim's child. The order was governed by RCW 9.95.210, which was part of

---

[3]The case of *State v. Lewis*, 57 Wn. App. 921, 791 P.2d 250 (1990) is distinguishable. In that case, the trial court ordered a defendant to pay restitution that included a $50,000 lump sum award for the victim's lost future earnings. Noting that such an award requires consideration of many complex factors, 57 Wn. App. at 924, that those factors and their interplay are "normally the subject of extensive expert testimony in civil damage actions," 57 Wn. App. at 924, and that "our criminal process is ill-equipped for such a task" because "criminal trial counsel are usually unfamiliar with civil damage concepts, and criminal dockets are already overburdened", 57 Wn. App. at 924, the appellate court held that future earnings losses of the vehicular homicide victim were not "easily ascertainable damages" within the meaning of the SRA. The trial court in the present case was setting a monthly amount of support, as opposed to awarding a lump sum based on a lifetime of earnings, and as shown above, the pertinent factors were simple.

[4]Although Young argues to the contrary, *Barr* is not distinguishable merely on the ground that the SRA shifted the focus of sentencing from rehabilitation to punishment. *See In re Mota*, 114 Wn.2d 465, 475-76, 788 P.2d 538 (1990) (rehabilitation plays minor role under SRA); D. Boerner, *Sentencing in Washington* 2-31 (1985) (overriding principle of the SRA is retribution or just deserts). Before the SRA, restitution was authorized for punitive purposes, RCW 9A.20.030 (authorizing restitution in lieu of a fine, and independent of any grant of probation), and for rehabilitative ones. RCW 9.95.210; *State v. Barr, supra.* Under the SRA, restitution is still authorized for punitive purposes — or as the Supreme Court has put it, to provide "punishment which is just". *State v. Davison*, 116 Wn.2d at 922 (quoting RCW 9.94A.010(2)); D. Boerner, at 4-14. Under both sentencing schemes, restitution plays a significant role, and there is no reason to think that the Legislature intended the restitution provisions of the SRA to be construed more narrowly than the restitution provisions that existed before.

Washington's "old" sentencing scheme, *i.e.*, the scheme that was replaced by the Sentencing Reform Act of 1981 (RCW 9.94A) in 1981. RCW 9.95.210 provides for restitution "to any person . . . who may have suffered loss or damage". The Washington Supreme Court held that this language authorized restitution in the nature of lost future child support payments.

Although differing in minor respects, some of which are discussed above, RCW 9.94A.140 and RCW 9.95.210 are similar for present purposes. Apparently for this reason, the Supreme Court recently relied upon *Barr* as it construed the restitution provisions of the SRA. *State v. Davison*, 116 Wn.2d 917, 920-21, 809 P.2d 1374 (1991). We do likewise, and *Barr* holds that loss of child support payments is "loss" for purposes of restitution.

### FAILURE TO EXERCISE DISCRETION

Young argues that Judge Hanley failed to exercise his own discretion because he believed that Judge Roper's decision was the "law of the case". The argument fails.

The record clearly shows that Judge Hanley exercised his own discretion. He heard extensive arguments of counsel on May 23, 1989, and he took the matter under advisement so that *he* could make a decision. When he issued his decision, he said that Judge Roper's decision "*was adopted by this department* and constitutes the law of the case." (Italics ours.)

■ Nothing in the law precluded Judge Hanley from adopting Judge Roper's decision in the way that he did. He accorded the parties a full and fair hearing, and when he ruled, he simply elected to adopt Judge Roper's decision as a shorthand way of expressing his own.

### CREDIT FOR INSURANCE PROCEEDS

■ Young argues that the trial court was required to credit the money paid by his liability carrier against his obligation to make child support payments. Restitution is a matter within the trial court's discretion, and its ruling will be disturbed on appeal only if there is an abuse of discretion. *Davison*, 116 Wn.2d at 919.

The record in this case is scant. Neither party saw fit to present any documentation concerning what Young's carrier had paid, or to whom. All the court was given was defense counsel's oral assertion that $300,000 had been paid, and the following oral assertions from the prosecutor:

> [T]his is my understanding based on talking to Mr. Juckett who represents the Pelham family and Mr. Koch who represents the Setzer family. That three hundred . . . thousand dollars . . . has now been subjected to an allocation of two hundred fifteen thousand to the Pelham family and eighty five thousand dollars to the Setzer family. Three hundred thousand dollars was policy limits of what was reasonably available.

The prosecutor went on to say that according to civil counsel, the economic analyses prepared as part of the civil case showed that $215,000 did not fully compensate Pelham's family for its loss, but that the family had nevertheless agreed to settle for that amount because it represented available policy limits.[5]

The State contends there was no proof that the carrier had paid $215,000 to Pelham's family. We disagree. The State told the court that payment had been made, and under the doctrine of invited error, discussed above, it is not now permitted to contend to the contrary. Additionally, the only information put before the trial court was that the payment had been made, and the trial court was entitled to credit that information notwithstanding its hearsay nature. There was no objection to its being considered, and the rules of evidence were not being applied.

The State does not contend that payments from a defendant's liability carrier should not be credited against the amount of the victim's loss.[6] At the trial level, the prosecutor expressly agreed to a credit under circumstances

---

[5]This information was presented to Judge Roper at the February 27, 1986, hearing, but when Judge Hanley made his decision, he had the transcript of that hearing before him.

[6]To be distinguished is the issue of crediting the insurance payments against the defendant's restitution obligation. The State does contend that that should not be done.

where the victims would nevertheless be made "financially whole".

Young seems to contend that there was insufficient information to support the trial court's implied determination that Pelham's children would not receive more than the amount of their loss[7] if child support was paid in addition to the $215,000. We hold to the contrary. The only information put before the court by either party was that the insurance payments did not fully compensate the victims, and under the circumstances presented by the record it was well within the trial judge's discretion to reasonably infer that the child support payments would not be in excess of the loss suffered by Pelham's children.[8]

Young argues that as a matter of law the trial court was required to credit the $215,000 to lost child support first, and to other items of damage thereafter. Rephrased, the argument is that he has the right to require that partial payments from his liability carrier be allocated first against "easily ascertainable damages", including lost child support, and only thereafter against other types of damage. Such a right, of course, would minimize not only his obligation to pay restitution, but also that portion of the victim's loss recoverable as restitution.

 We reject the argument. Like restitution in general, *State v. Davison, supra,* how to allocate insurance payments against the victim's loss is a matter for the discretion of the trial court. The court does not abuse that discretion if it elects to apply such payments first against items of loss not

---

[7]The trial court did not purport to apply that part of RCW 9.94A.140(1) which allows restitution not exceeding "double the amount of the offender's gain or the victim's loss". As a result, we need not address Young's argument that the words "double the amount of" modify the words "the offender's gain", but not the words "the victim's loss".

[8]At one point in his brief, Young says, "Victims who have been reimbursed by the defendant's insurance proceeds have no losses and cannot be awarded restitution." If this is intended as a contention that payment of policy limits necessarily means that the victim has been fully compensated, we reject it. Payment of policy limits is not the equivalent of full compensation. *See, e.g., Thiringer v. American Motors Ins. Co.,* 91 Wn.2d 215, 588 P.2d 191 (1978).

recoverable as restitution, thereby maximizing that portion of the loss that the victim or next of kin will recover. That is what the trial court did in this case, and there was no error.

Affirmed.

PETRICH, J., concurs.
WORSWICK, C.J., concurs in the result.