[No. 66978-8-I.   Division One.   January 14, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. LUIS F. COSGAYA-ALVAREZ, *Appellant*.

*Elaine L. Winters* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Brian M. McDonald, Deputy,* for respondent.

¶1 SCHINDLER, J. — Luis F. Cosgaya-Alvarez pleaded guilty to murder in the second degree of Omero Mendez and agreed to pay restitution "in full" to the victims of the crime. On appeal, Cosgaya-Alvarez claims the court did not have the statutory authority to impose restitution for court-ordered child support. In the alternative, he contends the court abused its discretion in determining the amount of restitution. We agree with the analysis in *State v. Young*, 63 Wn. App. 324, 818 P.2d 1375 (1991), and hold the court has the authority to impose restitution to the victims of a crime for court-ordered child support. We also conclude the court did not abuse its discretion in determining the amount of restitution, and affirm.

FACTS

¶2 As part of the plea agreement, Luis F. Cosgaya-Alvarez stipulated to the facts set forth in the affidavit of probable cause. According to the affidavit of probable cause,

on August 14, 2008, Omero Mendez drove to Lakota Junior High School to pick up his girl friend's son. After he arrived, a black Lincoln Navigator drove into the school parking lot. Cesar H. Moreno was driving the Navigator, Julio C. Colin-Serrano was in the front seat, and Cosgaya-Alvarez was in the backseat of the car "flashing gang signs." Moreno parked the Navigator in front of Mendez's car to prevent him from leaving. After a brief argument, Cosgaya-Alvarez pulled a bandana over his face, pulled out a gun, and shot Mendez. Mendez died of a single gunshot to the head.

¶3 The State charged Cosgaya-Alvarez with murder in the second degree while armed with a firearm. On September 8, the State filed an amended information also charging Moreno and Colin-Serrano with drive-by shooting and unlawful possession of a stolen firearm. Before trial, Cosgaya-Alvarez pleaded guilty to murder in the second degree and the mandatory deadly weapon enhancement. As part of the plea agreement, Cosgaya-Alvarez stipulated to the facts set forth in the certification for determination of probable cause and agreed to pay restitution "in full to the victim(s) on charged counts." The court imposed a standard-range sentence of 156 months with a 60-month deadly weapon enhancement and scheduled a hearing on restitution.

¶4 The State submitted a proposed order of restitution for $4,743.19 to Lorena Mendez for funeral and burial expenses; $13,761.61 to the Crime Victims Compensation Program for medical expenses, funeral expenses, and pension payments; and $100,200.00 to Crystal Morgan for court-ordered child support of the crime victim's two children. The State submitted the court order that required Mendez to pay child support of $300 per month to Crystal Morgan for O.M., born January 10, 2004, and $300 per month for E.M., born March 8, 2005.

¶5 At the restitution hearing, the defense attorney conceded the court had the authority to order restitution for the child support obligation.

As an initial matter, in concept we do not object to any of these. And with respect to the amounts, the proposed restitution to Lorena Mendez and the proposed restitution to the Crime Victims Compensation Program, we do not have any objection to. So, those amounts I think we can just basically take off the table; I'm happy to sign an order.

With respect to the amount for Crystal Morgan, what that reflects is child support obligations that the decedent was required to pay for the two children until their 18th birthday.

THE COURT: Okay. And there was a . . . judgment?

[DEFENSE COUNSEL]: There was a judgment.

THE COURT: Okay.

[DEFENSE COUNSEL]: Right. And initially, I . . . thought that that was something that wouldn't fit within the purview of the statute for restitution, but . . . State's counsel provided us with a—a case that seemed to suggest that that's actually is something that is properly sought . . . . I'm not going to be contesting that piece. The issue that I think is now before the Court is the proper amount.

The defense attorney argued that based on an annuity calculation, the court should order Cosgaya-Alvarez to pay only $67,687.33. The court rejected the defense request to reduce the court-ordered amount owed for future child support.

¶6 The "Order Setting Restitution" requires Cosgaya-Alvarez to pay $100,200.00 to Crystal Morgan for the child support obligation for the two children; to pay Lorena Mendez $4,743.19 for funeral and burial expenses; and to pay the Crime Victims Compensation Program $13,761.61 for medical expenses, funeral expenses, and pension payments.[1]

---

[1] The order also states that "[r]estitution is a joint and several obligation" with Colin-Serrano and Moreno "if convicted and ordered to pay under separate orders."

## ANALYSIS

¶7 Cosgaya-Alvarez contends the court did not have statutory authority to require him to pay restitution for the court-ordered child support. The State asserts that because Cosgaya-Alvarez conceded below that the court had the authority to order restitution for the child support obligation, he waived his right to challenge the court's authority for the first time on appeal.

■ ¶8 Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, restitution is " 'part of an offender's sentence.' " *State v. Hughes*, 154 Wn.2d 118, 155, 110 P.3d 192 (2005) (quoting *State v. Edelman*, 97 Wn. App. 161, 166, 984 P.2d 421 (1999)).[2] A defendant waives the right to challenge an alleged sentencing error for the first time on appeal if the error involves agreement to facts or the exercise of discretion. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). But a defendant can challenge a legal error in a sentence for the first time on appeal. *Goodwin*, 146 Wn.2d at 873-74; *see also State v. Bahl*, 164 Wn.2d 739, 750, 193 P.3d 678 (2008) (defendant always has standing to challenge illegality of sentence). Accordingly, Cosgaya-Alvarez may challenge the court's authority to impose restitution for court-ordered child support for the first time on appeal.

■ ¶9 The authority to impose restitution is entirely statutory. *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007). The "language of the restitution statute[ ] indicates legislative intent to grant broad powers of restitution." *State v. Davison*, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991). Restitution is both punitive and compensatory. *State v. Kinneman*, 155 Wn.2d 272, 279-80, 119 P.3d 350 (2005). The restitution statute requires the defendant "to face the consequences of his or her criminal conduct." *Tobin*, 161

---

[2] *See also State v. Kinneman*, 155 Wn.2d 272, 280-81, 119 P.3d 350 (2005).

Wn.2d at 524. Because the restitution statute is interpreted to carry out the statutory goals, the court "do[es] not engage in overly technical construction that would permit the defendant to escape from just punishment." *Tobin*, 161 Wn.2d at 524.

■ ■ ¶10 Under RCW 9.94A.753(5), the court shall order restitution "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property" unless extraordinary circumstances make restitution inappropriate. Restitution for injury or loss of property must also be "easily ascertainable." RCW 9.94A.753(3). RCW 9.94A.753(3) gives the court the discretion to order restitution up to double the amount of the victim's loss.[3]

¶11 Cosgaya-Alvarez argues that the court does not have the authority under RCW 9.94A.753(3) to order restitution for the victim's child support obligation because (1) the crime did not result in a "loss of property" and (2) the amount of restitution is not "easily ascertainable."[4] Division Two of this court considered and rejected the same argument in *State v. Young*, 63 Wn. App. 324, 818 P.2d 1375 (1991). We agree with the analysis in *Young*.

■ ¶12 In *Young*, the defendant was convicted of vehicular homicide. *Young*, 63 Wn. App. at 326. The court ordered the defendant to pay restitution for the victim's court-ordered child support obligation. *Young*, 63 Wn. App. at 329. On appeal, the defendant argued the court did not

---

[3] RCW 9.94A.753(3) provides, in pertinent part:

> [R]estitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the costs of counseling reasonably related to the offense. The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.

[4] Cosgaya-Alvarez's argument that murder is not the type of crime that results in loss of property is without merit. *See Davison*, 116 Wn.2d at 921 (upholding restitution for "loss of property" where the crime charged was assault).

have the authority under former RCW 9.94A.140 (1982) to order him to pay future child support.[5] *Young*, 63 Wn. App. at 329. The court identified the issue as whether a child support order is "loss of property" under the restitution statute.

> The issue, however, is not whether the [the victim's] duty to pay child support is "property"; rather, it is whether his children's corresponding right to receive support is "property". More importantly, the issue is not whether a child's right to receive support from a parent is "property" before that right is reduced to judgment. Because the right here had merged in a judgment requiring payments of $250 per month, the issue is whether a judgment requiring monthly child support payments is "property" for purposes of the restitution provisions of the SRA.

*Young*, 63 Wn. App. at 331.

¶13 The court held that because a child support order constitutes loss of property under the restitution statute, the court has the authority to order the defendant to pay restitution for future child support payments. *Young*, 63 Wn. App. at 330-31.

> This statute vests trial courts with the authority to order that the defendant in a vehicular homicide case pay as restitution the victim's future child support payments that were reduced to judgment before the victim's death.

*Young*, 63 Wn. App. at 330.

¶14 In reaching the conclusion that the court has statutory authority to order restitution for future child support payments, the court in *Young* relied on a pre-SRA case, *State v. Barr*, 99 Wn.2d 75, 658 P.2d 1247 (1983). *Young*, 63 Wn. App. at 332. In *Barr*, the deceased victim of a negligent homicide had a court-ordered obligation to pay child support under the terms of a decree of dissolution. *Barr*, 99

---

[5] The statutory provisions addressed in *Young* are the same as those in the current version, RCW 9.94A.753. The restitution provisions have since been renumbered. *See* LAWS OF 2001, ch. 10, § 6 (recodifying RCW 9.94A.140 as RCW 9.94A.750, recodifying RCW 9.94A.142 as RCW 9.94A.753).

Wn.2d at 76-77. Former RCW 9.95.210 (1980) allowed the court to order restitution "to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question." The defendant argued that the statute applied only to the victim of the negligent homicide and the court had no authority to order restitution to "collateral victims" for child support. *Barr*, 99 Wn.2d at 77. The Supreme Court disagreed. The court held that under former RCW 9.95.210(2), the superior court had the authority to order restitution for future court-ordered child support as a loss directly related to the commission of the crime. *Barr*, 99 Wn.2d at 77-78.[6]

¶15 Cosgaya-Alvarez claims the court's analysis in *Young* is flawed. Cosgaya-Alvarez asserts that under the rationale in *Young*, "any judgment creditor would be able to collect restitution when the debtor is killed." We disagree.

¶16 Unlike enforcement of a judgment by a creditor, restitution under the SRA is limited to compensation to the victim for injury, damage, or loss of property. RCW 9.94A-.753(5). The SRA defines a "victim" as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(53). Further, restitution for loss or injury is mandatory absent extraordinary circumstances. *See* RCW 9.94A.505(7) (sentencing court "shall order restitution"); RCW 9.94A.753(5) ("Restitution shall be ordered . . . unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment.").

¶17 Cosgaya-Alvarez also argues that restitution for court-ordered child support is not "easily ascertainable" under RCW 9.94A.753(3). Cosgaya-Alvarez relies on *State*

---

[6] *See also State v. Moen*, 129 Wn.2d 535, 539 n.1, 919 P.2d 69 (1996) (citing *Barr* in addressing the purpose of restitution); *Davison*, 116 Wn.2d at 920-21 (citing *Barr* for proposition that SRA should be broadly interpreted and that a restitution recipient may be someone other than the immediate victim).

*v. Lewis*, 57 Wn. App. 921, 924-26, 791 P.2d 250 (1990), in support of his argument.

¶18 In *Lewis*, the victim was killed in a car crash. *Lewis*, 57 Wn. App. at 922. This court held that the restitution statute did not authorize the award of a lump sum payment of $50,000 for the future earnings of the homicide victim. *Lewis*, 57 Wn. App. at 922-23. We concluded the amount was not "easily ascertainable" because an award of lost future earnings typically requires expert testimony and must take into account such factors as the victim's "health, life expectancy, job security, possibilities for advancement, and the appropriate discount and inflation factors for determining the present value of the future wages." *Lewis*, 57 Wn. App. at 924. We also concluded that because the legislature used the past tense in the language "lost wages," the restitution statute applied only to wages "already incurred." *Lewis*, 57 Wn. App. at 926.[7]

¶19 The court in *Young* distinguished the decision in *Lewis* by noting the difference between a court-ordered obligation to pay future child support and the determination of future lost wages. *Young*, 63 Wn. App. at 332 n.3.

> [L]oss of future child support payments previously reduced to judgment constitutes "easily ascertainable damages" within the meaning of the statute. The amount of such loss depends primarily on two factors: the terms of the judgment, and whether the children are still dependents. Each of those matters is simple to ascertain, and once each is known, the criminal court is in a position to set restitution insofar as lost child support is concerned.

---

[7] In a "Statement of Additional Authority," Cosgaya-Alvarez cites *State v. Goodrich*, 47 Wn. App. 114, 733 P.2d 1000 (1987), and *State v. C.A.E.*, 148 Wn. App. 720, 201 P.3d 361 (2009), to argue that the court does not have the authority to order him to pay restitution for court-ordered child support. *Goodrich* and *C.A.E.* interpret the "actual expenses incurred for treatment for injury to persons" language. RCW 9.94A.753(3); *Goodrich*, 47 Wn. App. at 116-17; *C.A.E.*, 148 Wn. App. at 726-27. Unlike a court order for child support, *Goodrich* and *C.A.E.* involve future medical expenses the victim was not yet obligated to pay. *Goodrich*, 47 Wn. App. at 117; *C.A.E.*, 148 Wn. App. at 726-27.

*Young*, 63 Wn. App. at 332 (quoting former RCW 9.94A-.140(1)).

¶20 Here, as in *Young*, the child support obligation had been reduced to judgment, and calculating the restitution amount is easily determined by multiplying the court-ordered obligation times the number of months until each child reaches the age of 18.

¶21 In sum, we agree with the analysis and rationale of the court in *Young*. We reject the argument that the court did not have the statutory authority to order restitution for court-ordered future child support.

¶22 In the alternative, Cosgaya-Alvarez argues the court erred in determining the restitution amount for child support by failing to take into account present value.

¶23 We review the amount the court orders for restitution for abuse of discretion. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). The State bears the burden of establishing the amount of restitution by a preponderance of the evidence. *Tobin*, 161 Wn.2d at 524. The amount of restitution must be based on "easily ascertainable damages." RCW 9.94A.753(3).

¶24 While restitution does not need to be established with specific accuracy, it should be supported by substantial evidence. *Griffith*, 164 Wn.2d at 965. " 'Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.' " *Griffith*, 164 Wn.2d at 965 (quoting *Hughes*, 154 Wn.2d at 154).[8] The restitution statute authorizes the court to award up to twice the victim's loss. RCW 9.94A.753(3) ("The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.").

¶25 Here, the State met its burden of establishing the amount of restitution. The State submitted the order of

[8] (Internal quotation marks omitted.)

child support filed in Clark County Superior Court on July 12, 2006. The order requires Mendez to pay $300 a month for each of the two children. The State provided a "Child Support Calculation for Omero G. Mendez," calculating the amount owed from the date of death, August 14, 2008, multiplied by the monthly amount due for each child until each child turned 18 years old.[9]

¶26 The defense attorney argued the court should take into account present value by calculating the amount owed as $67,687.33 based on "an annuity calculation such that the children would—if those direct amounts were deposited today, it would result in monthly payments of $300 until the 18th birthday."[10] Defense counsel asserted that based on an interest rate of 12 percent, the amount of $67,687.33 would allow each child to receive $300 a month until 18.

> [W]hat I have proposed . . . is to treat this essentially as an annuity. And so, to say that if the children are to receive $300 every month until their 18th birthdays, then you—you calculate essentially what the present value of that would be, including—or taking into consideration the statutory interest rate of 12 percent, which is what the Clerk's Office is required to—to charge.

¶27 Absent any showing "there is a way of investing that money to get a 12-percent return," the court rejected the defense argument. The court ruled, "I need to . . . issue an order that will secure . . . the possibility that [Crystal Morgan] will be able to recoup $600 a month during the term of her children's childhood." The court ruled that it

---

[9] Under RCW 26.09.170(3), a parent's obligation to pay child support ends when a child reaches the age of 18. *In re Marriage of Sagner*, 159 Wn. App. 741, 749, 247 P.3d 444 (2011).

[10] In his second Statement of Additional Authority, Cosgaya-Alvarez cites *In re Marriage of Schneider*, 173 Wn.2d 353, 364, 268 P.3d 215 (2011), and RCW 26.09.170, noting that child support orders are frequently modified. Cosgaya-Alvarez did not raise this issue below and may not raise it now. *Goodwin*, 146 Wn.2d at 873-74 (defendant cannot raise issues involving agreements to facts or trial court discretion for the first time on appeal).

was "exercising discretion to not discount it under the circumstances in order to avoid an underpayment, which would not fully compensate Crystal Morgan for her loss."

¶28 Cosgaya-Alvarez contends the State did not prove that the restitution amount for child support would not exceed the value of the monthly payments received over time. Cosgaya-Alvarez's argument is based on the speculative assumption that he could deposit $67,687.33 into an account that would begin earning interest at 12 percent. There is no indication in the record that Cosgaya-Alvarez had the means to deposit $67,687.33 into an account that would immediately earn 12-percent interest. The court did not abuse its discretion in rejecting Cosgaya-Alvarez's speculative request.[11]

¶29 Cosgaya-Alvarez also argues the court improperly shifted the burden by requiring the defense to provide information about prevailing interest rates. *State v. Dedonado*, 99 Wn. App. 251, 991 P.2d 1216 (2000), does not support his argument. In *Dedonado*, we held the State did not carry its burden of establishing a causal connection between the crime and the requested restitution, and the court erred in requiring the defendant to notify the State that the defense was challenging the restitution. *Dedonado*, 99 Wn. App. at 257. Here, unlike in *Dedonado*, the State carried its burden of proving the amount of restitution and the court did not impermissibly shift the burden to the defense.

¶30 We conclude the court did not abuse its discretion in denying Cosgaya-Alvarez's request to reduce the restitution amount based on speculative assumptions.

¶31 Because the court has the statutory authority to impose restitution for court-ordered child support and the

---

[11] The cases Cosgaya-Alvarez cite to argue the court abused its discretion in establishing the amount of restitution are inapposite. In *Cornejo v. State*, 57 Wn. App. 314, 325-29, 788 P.2d 554 (1990), the court permitted expert testimony regarding discounting damages in a civil wrongful death suit to present value. In *Sadler v. Wagner*, 5 Wn. App. 77, 83-85, 486 P.2d 330 (1971), the trial court did not abuse its discretion by excluding an exhibit calculating present cash value.

court did not abuse its discretion in establishing the amount of restitution, we affirm.

SPEARMAN, A.C.J., and DWYER, J., concur.

Review denied at 177 Wn.2d 1017 (2013).