IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>　　v.<br><br>JAZANE DAVID BROWN, and<br>MONIQUE DESIREE DUNCAN,<br>each of them,<br><br>　　　　　　　Appellants. | No. 84169-6-I<br>(consolidated with<br>84248-0-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. —　After each pleading guilty to three counts of theft in the third degree and agreeing to pay restitution in full but disputing the amount, Monique Duncan and Jazane Brown, co-defendants, appeal their restitution orders. They claim a lack of a causal connection between the losses and the crimes, that the court could only impose a maximum amount of restitution that was referenced in their guilty plea statements, and that their restitution amount violated their federal and state constitutional rights under the excessive fines, due process, and equal protection clauses. Substantial evidence supports a causal connection between the losses and the crimes, the equal protection claim is not ripe, and appellants waived the remainder of their claims. Accordingly, we affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

The State initially charged Brown and Duncan each with organized retail theft in the first degree and also charged Brown with assault in the fourth degree. The theft charge was based on three different incidents that occurred at a Home Depot store in July, August, and September of 2019. The same loss prevention officer (LPO) observed the thefts, unsuccessfully attempted to stop Brown and Duncan, and reported the thefts to police. The certifications of probable cause identified the value of the losses to be $4,416.20 (July), $7,363.95 (August), and $6,864.37 (September).

Following plea negotiations, Brown and Duncan, in separate plea hearings, pleaded guilty to three counts of theft in the third degree by way of second amended informations for the same July, August, and September thefts. For each of the incident dates, Duncan's statement of guilt stated, "I entered Home Depot in Redmond . . . and I did take property from Home Depot in an amount not exceeding $750 and with the intent to deprive Home Depot of said property." For each incident, Brown's statement of guilt stated, "I entered Home Depot in Redmond . . . and I did take property from Home Depot in an amount not exceeding $750 and with the intent to deprive Home Depot of that property."

Brown and Duncan each agreed that the "defendant shall pay restitution in full to the victim(s) on charged counts" and "agrees to pay restitution in the specific amount of $*TBD*" and also agreed to pay the victim penalty assessment (VPA). Both Brown and Duncan stipulated that "the facts set forth in the certification(s) for determination of probable cause and prosecutor's summary are real and material facts for purposes of this sentencing." The probable cause certifications delineated the items taken and their

value. At both plea hearings, the courts noted that the amount of restitution was yet to be determined.

As part of the plea agreement, the State agreed to recommend no additional jail time than what had already been served, unsupervised probation, and no additional legal financial obligations other than the mandatory VPA and restitution with the amount to be determined.

Brown and Duncan each had separate sentencing hearings with different judges, who followed the agreed sentencing recommendation. Parties in both hearings agreed that the amount of restitution would be determined at a future hearing. Both defendants waived their appearances at the future restitution hearing.

Restitution hearings were held at different times in front of different judges and both Duncan and Brown were not present for the hearings. The State provided the same supporting restitution documents before each court. The documentation included reports from the LPO signed under penalty of perjury, copies of receipts, photographs, incident reports, and a transcription of a defense interview with the LPO who witnessed all three theft incidents. In the interview, the LPO explained that he determined what was taken based on a combination of direct observation, viewing security video footage, and working with coworkers to check the daily inventory of the items that were taken. The State requested a total of $18,644 in restitution in each hearing consistent with the initial amounts listed in the certifications of probable cause, and the trial court imposed that amount jointly and severally. Defense counsel in both hearings challenged the State's evidence, but did not argue that the court was limited to a maximum of $750 in

3

restitution on each count.[1] Nor did defense counsel raise any constitutional claims.

Brown and Duncan separately appealed. A clerk of this court then consolidated their appeals. Following consolidation, Brown and Duncan each filed notices adopting each other's claims identified in their respective briefs.

DISCUSSION

The amount of a restitution award is within the court's discretion and will not be disturbed on appeal absent a showing of abuse. State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). A court's authority to impose restitution is statutory. Id. Under RCW 9.94A.753(5), restitution shall be ordered "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property. . ." Restitution also "shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury" and "shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime." RCW 9.94A.753(3)(a). While the claimed loss need not be established with specific accuracy, it must be supported by substantial credible evidence. Griffith, 164 Wn.2d at 965.

The trial court is allowed considerable discretion in determining restitution. State v. Kinneman, 155 Wn.2d 272, 282, 119 P.3d 350 (2005). We review a court's factual findings for substantial evidence. Griffith, 164 Wn.2d at 965. "Substantial evidence exists if the record contains evidence sufficient to persuade a fair-minded, rational

_____

[1] The judge in Brown's restitution hearing questioned whether there was any case law supporting that it could impose more than $750 in restitution on each count. The prosecutor explained that restitution was only limited by the facts themselves, not based on the level of crime to which the defendant pled. Defense counsel stated that she was not aware of any contrary authority. The trial court invited defense counsel to submit a motion for reconsideration if she could find legal authority holding otherwise. No motion was submitted.

person of the truth of the declared premise." State v. Lowery, 15 Wn. App. 2d 129, 138, 475 P.3d 505 (2020).

To support an order of restitution there must be a causal connection between the losses and the crimes charged. Griffith, 164 Wn.2d at 966 (citing State v. Tobin, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007)). Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss. Id. "In determining whether a causal connection exists, we look to the underlying facts of the charged offense, not the name of the crime to which the defendant entered a plea." Griffith, 164 Wn.2d at 966; see State v. Selland, 54 Wn. App. 122, 124, 772 P.2d 534 (1989) (holding that restitution is not limited by the definition of the crime of which defendant was convicted). When a defendant disputes a restitution amount, the State must prove the damages by a preponderance of the evidence. Kinneman, 155 Wn.2d at 285.

Appellants contend that the restitution order must be vacated because the State did not prove a causal connection between appellants' crimes and the specific amount of losses incurred by Home Depot. We disagree.

Specifically, they argue that the State failed to establish what the store inventory was prior to the theft and that the LPO only conducted an inventory audit for the September incident as reflected in his police statement. However, in the LPO's defense interview, he explained that the store evaluates the on-hand inventory daily. He further explained that "whenever I go back and do an inventory search in – in this manner, I go and I look and see what, exactly, we have on stock, of that particular SKU. Then I partner with an associate, to see what inventory states on our first phone. And I back and I double check and verify and we – we both walk through it. We both validate what's

exactly there and what's missing. That's how I was able to come up with the particular item number." He added, "I do not over estimate. I only estimated what I actually witnessed being removed from the shelf and placed into the bag." The record establishes that the LPO or coworkers were able to observe defendants working together in removing items from the shelves or retaining those items. The LPO also identified the items and compared the store's daily on-hand inventory to determine the value of the stolen merchandise. Substantial evidence supported a causal connection between the crimes and the losses incurred. The State proved Home Depot's damages by a preponderance of the evidence.

Appellants next contend that the maximum restitution the court could impose was $2,250 because each defendant pleaded guilty to taking property in an amount not exceeding $750 during each of the thefts. The State contends that appellants did not preserve this claim.

"As a general rule, appellate courts will not consider issues raised for the first time on appeal." State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). A party may claim an error for the first time on appeal if it concerns "(1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, [or] (3) manifest error affecting a constitutional right." RAP 2.5(a).

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, restitution is "'part of an offender's sentence.'" State v. Hughes, 154 Wn.2d 118, 155, 110 P.3d 192 (2005) (quoting State v. Edelman, 97 Wn. App. 161, 166, 984 P.2d 421 (1999)). A defendant waives the right to challenge an alleged sentencing error for the first time on appeal if the error involves agreement to facts or the exercise of discretion. State v.

Cosgaya-Alvarez, 172 Wn. App. 785, 790, 291 P.3d 939 (2013) (citing In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 874, 50 P.3d 618 (2002)). However, defendants can challenge a legal error in a sentence for the first time on appeal. Id. (citations omitted).

Whether appellants agreed to pay for losses in excess of $750 per count is a question of fact that they did not raise below. Thus, appellants waived this claim and did not establish a basis for review under RAP 2.5(a).[2]

However, appellants also contend that the court did not have the authority to impose a restitution amount greater than the definition of the crime. Defendants' statement of guilt reflected the definition of theft in the third degree. RCW 9A.56.050(a) provides that a "person is guilty of theft in the third degree if he or she commits theft of property or services which . . . does not exceed seven hundred fifty dollars in value." Because this claim is an alleged legal error, they can raise it for the first time on appeal. Cosgaya-Alvarez, 172 Wn. App. at 790.

Appellants cite to State v. Taylor, 86 Wn. App. 442, 936 P.2d 1218 (1997) to support their proposition that restitution can be limited to the definition of the crime. However, Taylor did not involve a plea of guilty. A jury had to decide if the defendant committed welfare fraud in the first degree or the lesser included offense of welfare fraud in the second degree for receiving between $250 and $1,500 benefits. Id. at 444.

---

[2] Because this claim is waived, we need not address the State's argument that appellants are bound by their plea agreement where they agreed to pay restitution to the victim "in full" and the State's request for specific performance. RAP 2.5(a). A plea agreement is a contract between the State and the defendant. State v. Wiatt, 11 Wn. App. 2d 107, 111, 455 P.3d 1176 (2019) (citing State v. MacDonald, 183 Wn.2d 1, 8, 346 P.3d 748 (2015)). "After a party breaches the plea agreement, the nonbreaching party may either rescind or specifically enforce it." Wiatt, 11 Wn. App. 2d at 111 (citing State v. Armstrong, 109 Wn. App. 458, 462, P.3d 397 (2001)).

The jury convicted Taylor of the lesser charge, but the court ordered restitution for $9,074, based on alleged facts that supported welfare fraud in the first degree. Id. We reversed the restitution order because the jury, the fact-finder, had to have determined that Taylor only benefited between $250 and $1,500 in benefits because of the guilty finding as to the lesser charge instead of welfare fraud in the first degree. Id. at 446. The Taylor court acknowledged that "restitution is not necessarily limited by the definition of the crime," but that the issue in Taylor was that "the jury's verdict" did not establish an underlying criminal act that could serve as the basis for a restitution award greater than $1,500. Id. at 445. Taylor is inapposite. The courts in the instant cases did not exceed their authority in ordering restitution in the amount of $2,250.

Appellants next contend for the first time on appeal that the trial court violated the excessive fines clause of the Eighth Amendment to the United States Constitution and article I, § 14 of the Washington Constitution because the court did not consider their lack of ability to pay when ordering the victim penalty assessment and restitution with a 12 percent annual interest rate.[3]

While a party may raise a claimed error for the first time when error affects a constitutional right, that error must be manifest. RAP 2.5(a). A "manifest" error is one that causes "actual prejudice." State v. Ramos, 24 Wn. App. 2d 204, 214, 520 P.3d 65, 72 (2022), review denied, 101512-7, 2023 WL 2400403 (Wash. Mar. 8, 2023). Actual prejudice means "the claimed error had practical and identifiable consequences." State v. Shelton, 194 Wn. App. 660, 675, 378 P.3d 230 (2016). Appellants cannot establish a manifest error affecting a constitutional right.

---

[3] Restitution allows for the "maximum rate" permitted by statute. RCW 10.82.090(1); RCW 4.56.110(6); RCW 19.52.020(1).

We recently held, once again, that the mandatory VPA is "'neither unconstitutional on its face nor as applied to indigent defendants.'" State v. Griepsma, No. 83720-6-I, slip op. at 3 (Wash. Ct. App. Mar. 13, 2023) (quoting State v. Curry, 118 Wn.2d 911, 918, 829 P.2d 166 (1992)), https://www.courts.wa.gov/opinions/pdf/837206.pdf; see State v. Tatum, 23 Wn. App. 2d 123, 130-31, 514 P.3d 763 (rejecting an excessive fines challenge to the VPA, explaining that we are bound by Curry), review denied, 200 Wn.2d 1021, 520 P.3d 977 (2022); Ramos, 24 Wn. App. 2d at 214 ("As this court explained in Tatum, we are bound by [Curry's] holding here."). We also recently held that restitution is inherently proportional to the crime even if the defendant lacks the ability to pay. Ramos, 24 Wn. App. 2d at 230. Additionally, we held that "[b]ecause the legislature did not intend for interest to be a penalty, and because interest accruing on restitution is paid to crime victims rather than to the government, interest on restitution awards is not punishment and not subject to an excessive fines clause analysis under the Eighth Amendment or article I, § 14." Id. at 228. Because appellants' claimed errors are not manifest, they are waived.

Appellants further contend for the first time on appeal that the 12 percent interest on restitution violates their constitutional rights[4] to substantive due process and equal protection because the courts did not inquire whether appellants had the ability to pay. This constitutional challenge requires further factual development, and the potential risk of hardship does not justify review before the relevant facts are fully developed. See

---

[4] WASH. CONST. art. I, § 3; U.S. CONST. amends. I, V, XIV; WASH. CONST. art. I, § 12; U.S. CONST. amend. XII.

Shelton, 194 Wn. App. at 672. Because nothing in the record indicates the State has attempted to enforce the imposed restitution or sanction for failure to pay, appellants' constitutional challenges are not ripe for review. RAP 2.5(a)(3).

We affirm.

_Coburn, J._

WE CONCUR:

_Bowman, J._          _Mann, J._