FILED
COURT OF APPEALS
DIVISION II

2013 JUN 11 AM 10: 39

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42614-5-II |
| Appellant, | |
| v. | |
| R.G.P., | PUBLISHED OPINION |
| Respondent. | |

QUINN-BRINTNALL, J. — As part of a deferred disposition for his third degree assault conviction, RGP, a juvenile, agreed to pay restitution to assault victim Nathan Martinez. The State requested $64,121.33 in restitution, mostly for Nathan's[1] hospital stay. In light of RGP's likely inability to pay this amount, the trial court ordered restitution in the amount of $7,187.73. The State appeals this restitution award, arguing that the trial court abused its discretion in considering RGP's ability to pay in setting a restitution amount insufficient to reimburse the victim of his crime. RGP argues that the evidence does not support awarding full restitution. Because the trial court abused its discretion in considering RGP's ability to pay, we reverse and remand to the trial court to reconsider the restitution award without consideration of RGP's ability to pay.

---

[1] We use the first names of Nathan Martinez and his father, Juan Martinez, for clarity.

FACTS

On May 30, 2010, 17-year-old RGP stabbed 19-year-old Nathan during a physical altercation that began over two stolen cases of beer. Witnesses confirmed the basic details of the incident. Nathan's spleen was damaged by the stabbing and had to be surgically removed. Neither Nathan nor his father, Juan Martinez, had medical insurance to cover the operation and resulting hospital stay.

The State initially charged RGP with two counts of second degree assault. RCW 9A.36.021(1)(a); RCW 9A.36.021(1)(c). On January 11, 2011, RGP entered a guilty plea in juvenile court[2] to one count of third degree assault. As part of the plea agreement, RGP agreed to pay "full restitution" although, at the time the plea was entered, restitution costs remained unknown. After accepting RGP's plea, the trial court heard argument on whether RGP should be granted a deferred disposition pursuant to RCW 13.40.127.[3]

The Pierce County Juvenile Probation Department argued against a deferred disposition in light of "the seriousness of this offense." Report of Proceedings (RP) (Jan. 11, 2011) at 11. RGP argued that a deferred disposition should be granted because

> this case is one of self defense. There was never a question about that. The government understands that. We understand that. [Nathan], who is the victim in this case, was the aggressor. [Nathan], who is the victim in this case, knocked [RGP] to the ground with a punch, jumped on top of him and was pummeling him in the head.

---

[2] On July 13, 2010, the State moved to waive a declination hearing and requested that the juvenile court retain jurisdiction over RGP's case.

[3] The Juvenile Justice Act of 1977, codified at ch. 13.40 RCW, "allows certain first time juvenile offenders to receive a single deferred disposition." *State v. D.P.G.*, 169 Wn. App. 396, 399, 280 P.3d 1139 (2012). "When a deferred disposition is granted, the respondent is found guilty upon stipulated facts, and disposition is deferred pending satisfaction of conditions of supervision that the court specifies." *State v. C.R.H.*, 107 Wn. App. 591, 593 n.1, 27 P.3d 660 (2001).

. . . .

> The question is whether or not [RGP's] use of the knife in stabbing the victim here was reasonable. That has been the issue in this case from the beginning. And the reduction of the charge and subsequent plea by [RGP] reflects truly a compromise.

RP (Jan. 11, 2011) at 11-12. RGP also argued that he had no prior criminal history and that following the incident, he spent 30 days in detention without incident, spent 120 days on electronic home monitoring without any violations, and had been performing well at school.

The trial court granted the deferred disposition, and the parties agreed to have a later hearing concerning restitution. Victim advocate Stacia Adams submitted restitution information on behalf of Nathan and his father on June 9, 2011. Evidence submitted involved, among other things, a $61,124 hospital bill addressed to Juan for Nathan's May 30 to June 3, 2010 hospital stay.[4]

The trial court held the restitution hearing on July 11, 2011. At the hearing, RGP argued that "regarding restitution, the Court is to take into consideration the offender's present, past, and future ability to pay" and that RGP could not afford to pay the $64,124 requested. RP (July 11, 2011) at 7. RGP requested that restitution be set at $2,187.73—the amount of "out of pocket" expenses incurred by Nathan—and leave out the $61,121.33 hospital bill addressed to Juan. The State argued that RGP "has been found guilty of the charge of felony assault related to the injuries here" and, in result, should be liable for the full amount of Nathan's medical expenses.

---

[4] The record reflects that the Martinezes attempted to have some of this amount compensated through the crime victim's compensation fund but the claim was rejected because Nathan has a felony history.

3

No. 42614-5-II

RP (July 11, 2011) at 10. The State further argued that the evidence was insufficient to support

RGP's "no ability to pay in the future" argument.[5] RP (July 11, 2011) at 10.

The trial court sought compromise between the two positions and awarded a total of

$7,187.73 in restitution:

> I think $61,000 is an awful lot of money for anybody, and I also think it's weird
> that Mr. Juan Martinez is in it for $61,000. So, I am going to order the total of
> $2,187 to Nathan, and then I'm reducing the $61,000 to $5,000. . . . I will order
> that be payable at $50 a month. Of course, more would be better, but it's an awful
> lot of money. In fairness, I just don't think he's ever going to get out from under
> $60,000.

RP (July 11, 2011) at 11-12.

The next day, the State filed a motion for reconsideration of the restitution order, arguing

that the trial court lacked the statutory authority to waive restitution costs related to medical

expenses. The trial court denied the motion stating,

> This was a deferred disposition, and I didn't want to set [RGP] up for failure. I
> was trying to get a realistic amount that I thought he could pay, given the fact that
> he doesn't have the ability to pay and that the victim, himself, was fully

---

[5] RGP's attorney argues on appeal that "the judge did not need 'evidence' to know that an order requiring payment within six months of more than $60,000 would be very difficult for almost *anyone*, let alone a 19-year old youth." Br. of Resp't at 26-27. While it is correct that, generally, the terms of a juvenile's deferred disposition are to be completed within one year, RCW 13.40.127(9)(a)(iv) now provides that dismissal of the deferred disposition is appropriate when "[t]he juvenile has either paid the full amount of restitution, or, made a good faith effort to pay the full amount of restitution during the period of supervision." And RCW 13.40.127(9)(b) now provides that "[w]henever a case is dismissed with restitution still owing, the court shall enter a restitution order pursuant to RCW 13.40.190 for any unpaid restitution. Jurisdiction to enforce payment and modify terms of the restitution shall be the same as those set forth in RCW 13.40.190." RCW 13.40.190(1)(d) states that the court may retain jurisdiction over a juvenile offender for up to 20 years after an offender's eighteenth birthday for purposes of ensuring the payment of restitution. Thus, here, the juvenile court may dismiss RGP's felony conviction—assuming all other requirements of the deferred disposition have been met—while simultaneously entering a restitution order requiring him to pay the remaining amount of restitution owed over a 20-year period (subject to later modification).

4

compensated by the decision that I made. I do believe that it's within the Court's discretion. I may be wrong, but somebody else can tell me that.

RP (Sept. 26, 2011) at 4. The State timely appeals the trial court's restitution order.

## DISCUSSION

The State argues that the trial court abused its discretion in considering RGP's ability to pay when it ordered restitution. Specifically, the State contends that statutorily the "court had no authority to base its ruling on respondent's ability to pay." Br. of Appellant at 10. Because the Juvenile Justice Act of 1977 no longer allows a trial court discretion to consider a juvenile offender's ability to pay restitution, we agree.

"The imposition of restitution generally lies within the trial court's discretion." *State v. C.A.E.*, 148 Wn. App. 720, 724, 201 P.3d 361, *review denied*, 166 Wn.2d 1013 (2009). We will not disturb a trial court's restitution award absent an abuse of discretion. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). A trial court abuses its discretion when it bases its decision on untenable or unreasonable grounds. *State v. Cunningham*, 96 Wn.2d 31, 34, 633 P.2d 886 (1981). "To the extent that a court bases its ruling on an incorrect interpretation of the law, it bases it on untenable grounds." *C.A.E.*, 148 Wn. App. at 724-25 (citing *State v. Quismundo*, 164 Wn.2d 499, 504, 192 P.3d 342 (2008)). We review issues of statutory interpretation and alleged errors of law de novo. *State v. Bunker*, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010); *State v. Haney*, 125 Wn. App. 118, 123, 104 P.3d 36 (2005).

RCW 13.40.127 provides for juvenile deferred dispositions. Pursuant to this statute, "[p]ayment of restitution under RCW 13.40.190 *shall* be a condition of community supervision under this section." RCW 13.40.127(5) (emphasis added). RCW 13.40.190(1) states,

(a) In its dispositional order, the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent. . . .

. . . .

(d) The court may determine the amount, terms, and conditions of the restitution including a payment plan extending up to ten years if the court determines that the respondent does not have the means to make full restitution over a shorter period. For the purposes of this section, the respondent shall remain under the court's jurisdiction for a maximum term of ten years after respondent's eighteenth birthday and, during this period, the restitution portion of the dispositional order may be modified as to amount, terms, and conditions at any time.

Although it is clear that the trial court *must* order restitution (when applicable) in deferred disposition cases, RCW 13.40.190(1) is ambiguous concerning how a trial court may use its discretion in determining the amount of restitution a juvenile offender owes. But the Washington Supreme Court definitively settled this issue in *State v. A.M.R.*, 147 Wn.2d 91, 96, 51 P.3d 790 (2002)[6]:

Restitution is mandatory for juvenile offenses:
> In its dispositional order, the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent. . . .

RCW 13.40.190(1). The statute uses the mandatory term "shall" to direct the court to order restitution. In 1997 the legislature deleted language from this statute that gave the court the sort of discretion it purported to exercise in this case:
> The court may not require the respondent to pay full or partial restitution if the respondent reasonably satisfies the court that he or she does not have the means to make full or partial restitution and could not reasonably acquire the means to pay such restitution over a ten year period.

---

[6] RGP cites *State v. Hunotte*, 69 Wn. App. 670, 674, 851 P.2d 694 (1993), for the proposition that in juvenile cases, "[t]he decision to impose restitution and the amount thereof are within the trial court's discretion." This proposition—also found in other cases prior to the *A.M.R.* decision, such as *State v. Landrum*, 66 Wn. App. 791, 795 n.4, 832 P.2d 1359 (1992)—is no longer tenable in light of the clear mandate supplied by the *A.M.R.* court. And if the legislature is of the opinion that in *A.M.R.* the Supreme Court misinterpreted amended RCW 13.40.190(1), then this is an issue for the legislature to address.

6

Laws of 1997, ch. 338, § 29(1). This sentence used the discretionary term "may." *See State v. Martin*, 137 Wn.2d 149, 154, 969 P.2d 450 (1999) ("shall" and "may" in same statute). Deleting this sentence removed the juvenile court's discretion to order only partial restitution based on ability to pay.

RGP argues that *A.M.R.* should be distinguished because his case involves a deferred disposition whereas the *A.M.R.* case did not. But the language of the deferred disposition statute, RCW 13.40.127(5), is unambiguous and provides that "[p]ayment of restitution under RCW 13.40.190 shall be a condition of community supervision under this section." "Where the language of a statute is plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the statute itself furnishes a rule of construction beyond which the court cannot go." *City of Seattle v. Ross*, 54 Wn.2d 655, 658, 344 P.2d 216 (1959). Accordingly, we refrain from adopting RGP's argument that for purposes of restitution, deferred dispositions should be treated differently than ordinary juvenile dispositions.

Following *A.M.R.*, the law on this matter is settled. In basing its decision to reduce the amount of restitution awarded to the Martinezes solely on RGP's ability to pay, the trial court abused its discretion. The legislature clearly intended to divest courts of the discretion to reduce restitution based on a juvenile defendant's ability to pay when it amended the Juvenile Justice Act of 1977 in 1997.[7] Accordingly, we agree with the State, vacate the restitution award, and

---

[7] RGP also argues that under *State v. J.A.*, 105 Wn. App. 879, 20 P.3d 487 (2001), and *State v. Lown*, 116 Wn. App. 402, 66 P.3d 660, *review denied*, 150 Wn.2d 1024 (2003), a juvenile court has a broad grant of authority "to use its discretion in any deferred disposition case." Br. of Resp't at 33. But *J.A.* addressed whether a "court has discretion under RCW 13.40.127 to dismiss a case despite a juvenile's technical failure to comply with a condition of a deferred disposition order," 105 Wn. App. at 883; similarly, *Lown* addressed whether a court commissioner properly applied "the judicially created exception for a 'de minimis' violation" of conditions of a deferred disposition. 116 Wn. App. at 409. Neither case touches on the issue before this court: whether a trial court may consider a juvenile offender's ability to pay restitution when setting the terms of a deferred disposition.

No. 42614-5-II

remand this matter to the trial court to consider the restitution award without regard for RGP's ability to pay. And, on remand, we direct the trial court to award restitution for medical expenses sufficiently proven to have a causal connection to the assault on Nathan.[8]

QUINN-BRINTNALL, J.

We concur:

HUNT, J.

JOHANSON, A.C.J.

---

[8] RGP argues that insufficient evidence supports a full restitution award and that a juvenile court judge is more than "a 'rubber stamp'. . . required to order restitution in whatever amount the prosecution asks, regardless of the context or facts." Br. of Resp't at 1. While we do not address this argument in detail in light of our order for remand, we note that when "a defendant disputes the restitution amount, the State must prove the damages by a preponderance of the evidence." *Griffith*, 164 Wn.2d at 965.