## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

IN RE DETENTION OF D.S.      )

STATE OF WASHINGTON,      )

                Respondent,      )

                v.      )

D.S.,      )

                Appellant.      )

NO. 69768-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 17, 2014

LAU, J. — DS seeks reversal of a 14-day involuntary treatment order and dismissal of the underlying petition, arguing the court denied his statutory and due process right to present evidence when it imposed a time limit on his direct-examination testimony. Finding no error, we affirm.

## FACTS

On December 17, 2012, Redmond Police Officer Julie Beard contacted DS in a police station lobby. DS said he suffered from chronic pain and claimed he had ingested 14 Percocet (narcotic pain relief) pills. He said he was not imminently suicidal but acknowledged that he wanted to die because of his pain.

Beard sent DS to Evergreen hospital in Kirkland. At the hospital, DS told Beard he wanted to force someone to perform surgery to alleviate his pain. He threatened to kill Beard and a social worker. He also said he would force Beard to kill him because he knew suicide was a sin. He claimed he had killed people and had left bodies in various locations. He threatened to harm hospital staff and shouted, "[T]hat bomb is still out there and I plan on using it to blow up the hospital." Report of Proceedings (Dec. 12, 2012) (RP) at 20.

DS told clinical psychologist Dr. Richard Thomas he would continue threatening health care workers until he received treatment for his nerve damage. Dr. Thomas diagnosed DS with "Mood Disorder NOS, Rule Out Single Depressive Episode." RP at 19.

On December 19, 2012, the State filed a 14-day involuntary treatment petition under chapter 71.05 RCW alleging that DS suffered from a mental disorder and that, as a result, he presented a likelihood of serious harm to himself and others.

During opening remarks at the probable cause hearing, defense counsel claimed the evidence would show no nexus between likelihood of harm and mental illness. She attributed DS's behavior to "chronic medical pain." RP at 3.

The State presented the testimony of Beard and Dr. Thomas. Beard testified that she had "no doubt" DS would assault her. RP at 9. Dr. Thomas opined that DS presented a substantial risk of harm to himself and others as a result of his mental disorder. Defense counsel cross-examined both Beard and Dr. Thomas about DS's complaints of medical pain, among other issues.

After Dr. Thomas's testimony near the end of the court day, the court advised both counsel that it needed to determine which cases remained on the court's calendar and raised the possibility of not completing DS's testimony, if he testified, due to the close of the court day at 4:30. Defense counsel expressed concern over the possibility of a 13-day continuance. She stated, "I'd just also like to clarify on the record that we were not aware yesterday that we—that if we didn't finish this case today that Your Honor wouldn't be back until [January 2, 2013]." RP at 35-36. The court also noted insufficient time to address the remaining matters calendared for the court day. When defense counsel said she was ready to proceed, the court stated, "Yes, let's get [DS] in because we have very little [time]." RP at 36.

DS testified that he remembered the night of his initial detention. He said he was "frustrated" by "[n]ot getting medical help year after year, try after try, avenue after avenue." RP at 37. He testified extensively about his nerve pain and his efforts to secure treatment.[1] At 4:30, during DS's rambling response to his attorney's question about approval for funding, the court reminded counsel, "We're going to need to either wrap it up right now or it's going to be continued until [January 2, 2013]." RP at 41. Defense counsel responded, "I don't feel that I can effectively finish my direct examination." RP at 41. The court advised, "I can go for four more minutes or something but that's it." RP at 42.

Defense counsel responded, "I would prefer to finish today and have a ruling today . . . if that's the only choice." She added, "I would just like it to be clear for the record that I don't feel that I've effectively done a direct examination of the respondent."

---

[1] The record shows six pages of trial transcript devoted to DS's testimony.

RP at 42. The court stated, "Okay. That's fine. I'm—it's your option." RP at 42.

Defense counsel stated, "So in that case we'll rest, if that's the only option." RP at 42.

The State declined to cross examine DS and presented no rebuttal evidence. In response to DS's impromptu comment, "But I would like to say one thing, I've . . . gone through every avenue possible," the court commented, "[DS], your case was closer before you testified, frankly." RP at 43.

The court entered written findings of fact and conclusions of law and ordered DS to undergo involuntary treatment for a period not to exceed 14 days. DS appeals.

## ANALYSIS

As a preliminary matter, the State claims this appeal is moot because DS is no longer detained. Because the superior court's order may have adverse consequences on future involuntary treatment determinations, this appeal is not moot. In re Det. of M.K., 168 Wn. App. 621, 625-30, 279 P.3d 897 (2012). Alternatively, our Supreme Court has long considered clarification of the involuntary treatment statutes a matter of continuing and substantial public interest. See In re Det. of C.W., 147 Wn.2d 259, 270, 53 P.3d 979 (2002); In re Det. of Swanson, 115 Wn.2d 21, 25, 804 P.2d 1 (1990). Either of these grounds provides sufficient justification to address the merits.

The sole issue is whether the trial court violated DS's statutory and due process right to present evidence. DS claims, "The superior court violated the respondent's due process and statutory rights to present evidence on his own behalf at the hearing on the State's 14-day involuntary commitment petition." Br. of Appellant at 1. He argues, "The 14-day commitment order should be reversed and the petition dismissed." Br. of Appellant at 11. We review issues of statutory interpretation, alleged errors of law, and

alleged due process violations de novo.[2] In re Det. of Fair, 167 Wn.2d 357, 362, 219 P.3d 89 (2009); State v. R.G.P., 175 Wn. App. 131, 136, 302 P.3d 885 (2013).

Under RCW 71.05.240(1), "If a petition is filed for fourteen day involuntary treatment or ninety days of less restrictive alternative treatment, the court shall hold a probable cause hearing within seventy-two hours of the initial detention of such person as determined in RCW 71.05.180." DS does not expressly challenge the State's compliance with the 72-hour requirement—nor could he, since the probable cause hearing indisputably commenced before the 72-hour deadline passed. See Swanson, 115 Wn.2d at 28-31 (court satisfies 72-hour requirement if the court calendar begins and the parties are ready to proceed before the 72-hour deadline expires).

DS contends that the court forced him to make a "Hobson's choice" between his right to present evidence under RCW 71.05.360(5) and the right to a hearing within 72 hours of initial detention under RCW 71.05.240(1). For this point, he relies on State v. Michielli, 132 Wn.2d 229, 937 P.2d 587 (1997), and State v. Brooks, 149 Wn. App. 373, 203 P.3d 397 (2009). Neither case controls. Michielli involved dismissal of criminal charges under CrR 8.3(b). Brooks involved CrR 8.3(b) dismissal based on allegations of government mismanagement and discovery violations.

DS also relies on CW and Swanson to argue that dismissal is warranted when involuntary commitment requirements are disregarded. Neither case controls. DS identifies no statute that requires the court to complete the probable cause hearing

---

[2] The State argues an abuse of discretion standard of review applies. DS does not address the proper standard of review. Given our discussion below, the State prevails under either an abuse of discretion standard of review or the less deferential de novo standard of review.

within RCW 71.05.240's 72-hour requirement. We conclude no statutory violation occurred.

The record also undisputedly shows that DS's chronic pain "defense" was not disputed by the State witnesses. Indeed, Dr. Thomas's medical opinion on this point supported DS's complaints about his chronic pain. DS also testified repeatedly about his chronic pain.

In addition, defense counsel made no offer of proof as to what evidence DS would provide if allowed additional time. By this point, the court had observed DS while he testified extensively about his chronic pain and other details. The court expressed concern that DS's testimony hurt his case.

The court also allowed defense counsel an additional four minutes or more to wrap up DS's testimony.[3] Instead of using this time, counsel decided not to elicit further testimony from DS. Defense counsel asked the court "to finish today and have a ruling today." RP at 42.

We also note the well-accepted principle that "[t]rial courts have the inherent authority to control and manage their calendars, proceedings, and parties." State v. Gassman, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012). Our Supreme Court has noted the need for control is especially vital in the involuntary treatment context:

> We are also aware of the need to avoid placing the impossible burden on the trial court of predicting how long any given calendar will last or exactly when a particular case will be heard. As [the State] said at oral argument, there are numerous ways in which the calendar's time restraints are buffeted by the mental instability of the individuals appearing before the court. By its very nature, the calendar is unpredictable. It is easy to visualize a circumstance where a single

---

[3] The court also offered to resume the hearing on the next available date of January 2, 2013.

disruptive patient could cause a significant delay in the hearing process. Thus, even if the court were to do its best to arrange the order of cases to reflect the expiration times, there would be no guaranty that the schedule would move forward according to plan.

Swanson, 115 Wn.2d at 29. This case aptly illustrates this observation.

Finally, we are unpersuaded by DS's due process challenge. He provides no controlling authority and offers no specific due process analysis. This claim fails. See Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

For the reasons discussed above, we affirm.[4]

WE CONCUR:

---

[4] Even if we assume a statutory or due process violation on this record, any alleged error is harmless.