# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF LEEANNA RUTH MICKELSON | No. 49056-1-II |
| HEATHER MICKELSON, | |
| Appellant, | |
| v. | |
| JAMES A. MICKELSON, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Heather Mickelson appeals the superior court's order of dismissal and seeks to restore a "lost order" finding that her mother died intestate. She argues that (1) the superior court erred in refusing to restore the lost probate document because the finding that her mother died intestate was undisputed; (2) the superior court entered a void order of dismissal in her case because (a) notice of the hearing was never served to potential beneficiaries of her mother's estate; and (b) this court had exclusive jurisdiction over her case when the superior court entered its order of dismissal; and (3) the superior court erred in refusing to impose CR 11 sanctions against her father and opposing counsel for filing frivolous pleadings. We affirm the superior court's order of dismissal.

No. 49056-1-II

FACTS

A.    BEFORE APPEAL

Leeanna Ruth Mickelson[1] died in Pierce County on May 1, 2012. She was survived by her husband, James A. Mickelson, and four adult children. Four years after Leeanna died, her daughter, Heather Mickelson, filed a petition for adjudication of intestacy and heirship under RCW 11.28.110.

On May 16, 2016, Mickelson appeared pro se in superior court asking the court to enter an order of intestacy for her deceased mother and for a temporary injunction to preclude her father from selling her deceased mother's assets.[2]

At the May 16 hearing, Mickelson handed the superior court an order of intestacy for the court's signature. The superior court informed Mickelson that the court needed a declaration verifying that there was indeed a search for a will and that no will was found before the court would sign the order of intestacy. Mickelson informed the court that she had an e-mail from their family attorney stating that they did not have an original copy of her mother's will and an e-mail from her father, in which he stated that her mother did not have a will. Mickelson explained that four hours after their family attorney sent his e-mail, the family attorney told her that they had

---

[1] Many individuals involved in this case share the last name Mickelson. For clarity, this opinion refers to the appellant by her last name and all others with the same last name by their first names. No disrespect is intended.

[2] Mickelson's purpose in seeking the orders was to prevent her father from selling their family home in Cabo San Lucas, Mexico. Mickelson believed the order of adjudication of intestacy would ensure the house passed to her instead of her father because Mexican law provides that intestate succession passes to the decedent's children, not the spouse.

2

made a mistake and that her mother did not actually have a will. Mickelson also confirmed that her parents had a community property agreement, but no will.

The superior court told Mickelson that although Mickelson had filed a declaration for disbursements, she needed to file an amended declaration providing the e-mail from the attorney's office stating that there was no will before the court would sign the order of intestacy. The court gave Mickelson back her petition and said, "And then let's file the amended declaration with the e[-]mail from the attorney's office and sign the order." Verbatim Report of Proceedings (VRP) (May 16, 2016) at 5. The superior court then signed an order setting a hearing date of June 13 for Mickelson's request for a temporary injunction.

The next day, on May 17, Mickelson returned to superior court claiming that she went to the clerk's office "to obtain copies of [the court's] signed order, the order apparently was lost, and the clerk had accidentally shredded it." VRP (May 17, 2016) at 2. Mickelson asked the court to re-sign the order and provide her with a certified copy. The court did not sign the order presented.[3]

Mickelson returned to superior court later that day and presented the court with another petition for adjudication of intestacy to sign. The court informed Mickelson that this was the same document she had asked the court to sign twice previously and that the court was not going to sign any document. The court pointed out to Mickelson that the clerk's office had directed Mickelson

---

[3] The superior court told Mickelson that the clerk's office had actually contacted the superior court the day before. The court advised Mickelson that "I think you're proceeding in the wrong manner." VRP (May 17, 2016) at 2. When Mickelson asked about the letters of intestacy, the court informed her, "Yeah. I don't think this is the correct procedural avenue. And I think the clerk's office has told you that." VRP (May 17, 2016) at 2.

as to what process she needed to follow. The court ruled that once Mickelson followed the clerk's instructions, the court would sign her petition.

On June 1, James filed a motion to dismiss Mickelson's petition for adjudication of intestacy with prejudice under CR 12(b)(6) and to award attorney fees and impose CR 11 sanctions against Mickelson. On June 2, James filed an amended motion.[4] James argued that Mickelson failed to state a claim upon which relief may be granted because he and his wife executed a community property agreement, which immediately vested all identified property in him as the surviving spouse. He further argued that because the community property agreement was public record and in effect at the time Leeanna died, Mickelson filed her petition to harass him and bypass her mother's wishes.

On June 3, Mickelson appeared in superior court and asked that "an order re: Adjudication of Intestacy and Heirship [] be signed." Clerk's Papers (CP) at 22. The court declined to sign the order. On June 7, Mickelson again presented an order of adjudication of intestacy and heirship in to the court. The court again did not sign the order.

On June 13, Mickelson filed a notice of appeal, seeking review of the "decisions of the Superior Court to shred an order signed by the commissioner on May 16, 2016, refuse to correct the shredding and reenter an order finding that [her] mother died without [sic] dated June 3, 2016 and then on June 7, 2016." CP at 17. We sent a letter to Mickelson on June 29, informing her that she had filed her notice of appeal prematurely and that she first needed to obtain a final order from the superior court.

---

[4] This motion was identical to the June 1 motion.

B.      AFTER NOTICE OF APPEAL FILED

On June 17, the superior court held a hearing on James's motion to dismiss. The court ruled that the community property agreement controlled, and thus, there was no basis for a probate. The court granted James's motion for dismissal, ruling that there was no legal basis for Mickelson's petition to move forward. However, the court reserved ruling on James's request for CR 11 sanctions against Mickelson.

Mickelson then filed a motion, asking the superior court to hold James in contempt for disposing of the assets of the estate. Mickelson claimed that the superior court's order of dismissal entered on June 17, was void because this court had jurisdiction over the case on that date. Mickelson later filed declarations indicating that her sister never received notice of the June 17 motion hearing. On July 11, the superior court denied Mickelson's motion, ruling that its prior order of dismissal stands. CP at 33.

On October 21, the parties appeared before the superior court on James's motion to continue a hearing date in the case. Mickelson did not appear at this motion hearing, but her sister, Gale McArthur was present. During this hearing, the superior court noted that McArthur was not listed as a party in any of the pleadings in the case. Although McArthur's brothers had previously appeared and argued against Mickelson's position, they also were not listed as parties in the case.

On November 14, Mickelson presented a petition in King County Superior Court, asking the court to grant her order adjudicating intestacy. The King County Superior Court signed and filed an "Order Adjudicating Intestacy and Heirship" finding her mother died intestate.

On November 18, the parties again appeared before the Pierce County Superior Court. Mickelson asked the court to "match" the King County court ruling and change the venue of her

5

case to King County. VRP (Nov. 18, 2016) at 8. Mickelson told the court that the issue on appeal was to seek reinstatement of the court's intestacy order from May 16, and to vacate the superior court's order of dismissal from June 17, 2016 because it was void. Mickelson again argued that the court's order of dismissal was void because not all parties were served notice of the hearing and because the appellate court had jurisdiction over the case. Mickelson also argued that the court should have granted sanctions against James on June 17 for not serving the parties.

We notified Mickelson, by letter dated July 18, 2017, of our decision to review her case and set the matter for September 15 for consideration.

ANALYSIS

A.    PETITION TO RESTORE THE LOST ORDER OF INTESTACY

Mickelson contends that the superior court erred in refusing to restore the superior court's order signed on May 16, 2016, finding her mother died intestate. Because the superior court was not required to restore the document upon Mickelson's motion and because the record does not show that the superior court ever signed this order, we disagree.

1.   Standard of Review

When a superior court exercises its discretion in a case where it had the right to exercise such discretion, we will not disturb the holding absent a clear showing of abuse of discretion. *In re St. Martin's Estate*, 175 Wash. 285, 289, 27 P.2d 326 (1933) (affirming the superior court's appointment of an administrator of the estate who was not the person selected and agreed upon by the petitioners). This is a rule of general application; thus, it extends to matters involving probate. *Id.*; *see In Re Estate of Black*, 153 Wn.2d 152, 171-72, 102 P.3d 796 (2004) (reviewing a probate court's refusal to hear all challenges to the validity of a will at a probate proceeding under an abuse

6

of discretion standard). A superior court abuses its discretion when its ruling is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *DeLong v. Parmelee*, 157 Wn. App. 119, 164, 236 P.3d 958-59 (2010), *dismissed on remand*, 164 Wn. App. 781, 267 P.3d 410 (2011).

### 2. Refusal to Restore the "Lost" Order

In arguing that the superior court was required to restore its order granting her petition for adjudication of intestacy, Mickelson relies on RCW 5.48.060. Under RCW 5.48.060, a probate court may restore records, papers, or proceedings relating to the estates of deceased persons upon its own motion, or upon application in writing of any party in interest. The court may also make such order or decree establishing such original record, "as to him or her shall seem just and proper." RCW 5.48.060.

RCW 5.48.060 does not require a superior court to restore every lost probate record as Mickelson contends. Rather, it vests a probate court with the discretion to restore lost proceedings to the extent the court deems just and proper. RCW 5.48.060.

Mickelson relies on the superior court's May 16, 2016 comment "[a]nd then let's file the amended declaration with the e[-]mail from the attorney's office and sign the order" to argue that the superior court signed the order on May 16, 2016. VRP (May 16, 2016) at 5; Br. of Appellant at 4. But when read in the context of the entire proceeding, it is clear the superior court was telling Mickelson that the court would sign an order of intestacy after Mickelson provided the necessary documentation showing her mother died intestate. The superior court repeatedly directed Mickelson to file the e-mail from her family attorney stating that her mother did not have a will. The superior court clarified this ruling the next day when it again told Mickelson that the court

7

would not sign her order of intestacy and that Mickelson needed to follow the probate clerk's instructions. Instead of providing the superior court with the required documentation, Mickelson continued to present another petition seeking an order of adjudication of intestacy or motions asking the superior court to reinstate the "lost" order of intestacy. VRP (May 17, 2016) at 2. Thus, the record shows that the superior court never signed an order finding Mickelson's mother died intestate.

Given that the superior court did not sign Mickelson's order of adjudication of intestacy on May 16, 2016, the superior court did not abuse its discretion in refusing to reinstate such order in subsequent court proceedings.

B.      THE ORDER OF DISMISSAL WAS NOT VOID

Mickelson argues that the superior court's June 17, 2016 order granting James's motion to dismiss was void because not all parties were served notice of the court proceeding and because this court had exclusive jurisdiction over the case. We disagree.

    1. Service on Mickelson's Siblings

Mickelson's argument that the superior court's order dismissing her petition was void because her siblings were not served with notice of the hearing is without merit. Service is required to be made on parties to an action. CR 5(a). Mickelson did not name her siblings as parties in her petition. Although they appeared at hearings, Mickelson's siblings never filed a joinder or moved to intervene in the case. Thus, Mickelson's siblings were not parties to the action.[5] Because

---

[5] Mickelson relies on Pierce County Local Rule 7(a)(4) to argue that because all heirs are parties, they must be served notice of court proceedings. Mickelson fails to provide any legal authority supporting her argument that all potential heirs to her mother's estate automatically became parties to her petition for an order finding her mother died intestate. Therefore, we decline to make such

Mickelson's siblings were not parties, we hold that James was not required to provide them with notice of the hearing on his motion to dismiss Mickelson's claim.

2.  The Superior Court had Jurisdiction

Mickelson also claims that this court had exclusive jurisdiction over the case as soon as she filed a notice of appeal on June 13, 2016. This argument is without merit.

After Mickelson filed her notice of appeal on June 13, we sent a letter to her on June 29, stating that her appeal was prematurely filed. The trial court retains full authority to act in a case before review is accepted by the appellate court.[6] RAP 7.1. Mickelson was not notified that we had accepted review of her case until July 18, 2017. Thus, the superior court had jurisdiction to dismiss her case at the June 17, 2016 motion hearing.

C.      REFUSAL TO IMPOSE SANCTIONS

Mickelson argues that the superior court erred in failing to impose sanctions against James's attorneys because they filed pleadings with "no real merit other than to distract the Court." Br. of Appellant at 7. We disagree.

1.  Standard of Review

We review a superior court's decision to impose or deny CR 11 sanctions for an abuse of discretion. *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 745, 218 P.3d 196 (2009). A superior court abuses its discretion only when it bases a ruling on untenable or unreasonable

---

a holding. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

[6] The exceptions to this rule do not apply in this case. *See* RAP 7.1.

grounds. *State v. R.G.P.*, 175 Wn. App. 131, 136, 302 P.3d 885, *review denied*, 178 Wn.2d 1020 (2013). "'A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard.'" *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

    2.  Imposing CR 11 Sanctions

Under CR 11, a superior court may impose sanctions to remedy situations "'where it is patently clear that a claim has absolutely no chance of success.'" *Saldivar v. Momah*, 145 Wn. App. 365, 404, 186 P.3d 1117 (2008) (quoting *John Doe v. Spokane & Inland Empire Blood Bank*, 55 Wn. App. 106, 122, 780 P.2d 853 (1989)), *review denied*, 165 Wn.2d 1049 (2009). However, in doing so, courts "'must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer." *Id.*

CR 11 addresses two types of filings—(1) baseless filings and (2) filings made for an improper purpose. *West v. Wash. Ass'n of County Officials*, 162 Wn. App. 120, 135, 252 P.3d 406 (2011). A filing is baseless if it is "'(a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law.'" *Id.* (quoting *MacDonald v. Korum Ford*, 80 Wn. App. 877, 883-84, 912 P.2d 1052 (1996)). If a party files a baseless motion, the superior court may impose sanctions upon motion or "upon its own initiative." CR 11(a). The superior court is not required to impose sanctions for every CR 11 violation. *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 219, 304 P.3d 914,

*review denied*, 178 Wn.2d 1022 (2013). Also, the court may deny a request for sanctions without entering findings on whether or not a CR 11 violation occurred. *Id.*

Here, Mickelson never filed a motion requesting that the superior court impose sanctions on James's attorneys. Instead, it was James that requested the superior court impose CR 11 sanctions against Mickelson for filing a baseless petition for adjudication of intestacy. Therefore, the basis of Mickelson's argument is that the superior court erred in not imposing sanctions upon its own initiative.

Mickelson contends that James filed pleadings merely to "disrupt the administration of justice and obstruct the entry of an undisputed fact that the decedent died intestate." Br. of Appellant at 7. Specifically, she relies on *Norris v. Norris*, 95 Wn.2d 124, 129, 622 P.2d 816 (1980), to argue that James's argument that the community property agreement controlled distribution of Leeanna's assets was frivolous.

Mickelson's reliance on *Norris* is misplaced. In *Norris*, a married couple executed reciprocal wills, but subsequently created a community property agreement after their friends told them about its tax advantages. *Norris*, 95 Wn.2d at 126. After the wife died, the husband elected to take from the will. *Id.* Later, the husband tried to claim under the community property agreement, challenging the validity of the probate of his wife's will in light of the community property agreement. *Id.* at 128. The court held that because the husband accepted benefits under his wife's will, he could not later assert rights under their community property agreement. *Id.* at 133-34.

*Norris* is not analogous to this case. This case does not involve a husband's decision to first accept benefits under his wife's will and then later assert his rights under their community

property agreement. Instead, James argued that Mickelson's petition should be dismissed because the community property agreement controlled the distribution of Leeanna's estate. CP at 65-66. There is no indication that James's claim lacked factual or legal basis, or that James's attorney failed to inquire into the factual and legal basis for the claim. In fact, the superior court agreed with James's argument that the community property agreement controlled when the court granted James's motion to dismiss Mickelson's petition on June 17, 2016. VRP (June 17, 2016) at 7.

Also, Mickelson's only evidence that James filed his motion to dismiss for the purpose of harassing her was the filing of the motion itself. This is not sufficient to show that James filed a motion for the sole purpose of harassing her. Thus, we reject Mickelson's argument that the superior court should have imposed CR 11 sanctions on James's attorneys upon its own initiative.

We affirm the superior court's order of dismissal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Johanson, P.J.

Melnick, J.